E-FILED
Tuesday, 10 November, 2026 08:46:12 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **INSTITUTE FOR CONSTITUTIONAL MILITARY LAW,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES DEPARTMENT OF DEFENSE; DEPARTMENT OF THE ARMY; DEPARTMENT OF THE NAVY; DEPARTMENT OF THE AIR FORCE; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; SECRETARY OF DEFENSE; SECRETARY OF THE ARMY; SECRETARY OF THE NAVY; SECRETARY OF THE AIR FORCE; and SECRETARY OF HOMELAND SECURITY, each Secretary in an official capacity,** | ) | **Case No. _____________** <br> **Equitable Relief Is Sought** |
| **Defendants.** | ) | |

**<u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

Plaintiff Institute for Constitutional Military Law, by its undersigned counsel, files this Complaint against the Defendants named above and alleges as follows.

## INTRODUCTION

1. Under its power "To make Rules for the Government and Regulation of the land and naval Forces," U.S. Const. art. I, § 8, cl. 14, Congress requires that no member of the armed forces be discharged or released from active duty without a discharge certificate or certificate of release. 10 U.S.C. § 1168(a). Today that certificate is the DD Form 214 ("DD-214"). It is the official documentary account of a veteran's service, and it attaches to the veteran for life.

2. The DD-214 and the rest of a person's military record can be inaccurate or incomplete, and veterans and their loved ones often seek to have them corrected, fairly and accurately. For more than a century prior to modern executive agencies, Congress passed "private bills" that granted individual relief for veterans' record corrections and discharge upgrades, one congressional bill at a time. In 1946 Congress discontinued this practice. It eliminated private bills for "the correction of a military or naval record" and gave the work to the Secretaries, "acting through boards of civilian officers or employees," to "correct any military or naval record where in their judgment such action is necessary to correct an error or to remove an injustice." Legislative Reorganization Act of 1946, ch. 753, §§ 131, 207, 60 Stat. 812, 831, 837. Those boards are today's boards for the correction of military and naval records. 10 U.S.C. § 1552(a)(1). A second set of boards, the discharge review boards, more narrowly review petitions for discharge-related corrections. 10 U.S.C. § 1553(a).

3. When military boards of review vote to either grant or deny relief, their decisions are final binding agency actions. Since 1996 the Freedom of Information Act has required all agencies, including both types of board, to make their final decisions available to the public in electronic form. 5 U.S.C. § 552(a)(2). Department of Defense regulations require that the discharge review boards' decisions be indexed so that the public can find "those cases that may be similar to an applicant's case." 32 C.F.R. § 70.8(l)(4). For the correction boards, a separate statute has required since 2016 that each final decision be made public on a centralized website. 10 U.S.C. § 1552(a)(5). The Department of Defense publishes the decisions of all eight boards, the correction boards and the discharge review boards of the Army, the Navy and Marine Corps, the Air Force and the Coast Guard, on a website titled "Boards of Review Reading Rooms," at boards.law.af.mil ("the website"), which has been online since at least May 2000. In 2024, in a

pro-veteran reform titled "Improving Military Administrative Review," Congress added that, beginning October 1, 2026, the correction boards' published information "shall include a summary of each decision, to be indexed by subject matter." 10 U.S.C. § 1552(a)(5); Pub. L. 118-159, div. A, tit. V, § 523, 138 Stat. 1773, 1884 (2024). The Secretaries were given more than twenty-one months to implement the summary and indexing requirements.

4. On October 1, 2026, the website carried no summary of any decision and no subject index, and it carries none today. In advance of the legal deadline set by Congress, the Institute asked each Defendant agency under the Freedom of Information Act for records of its preparations to carry out these duties and for lists of any decisions it has not published. In all, the Institute sent nineteen requests between September 23 and 30, 2026. Not one agency produced a single record in response until November 5, 2026, when the Board for Correction of Naval Records released position descriptions for its senior staff and training materials for its members.

5. A veteran or legal representative who asks a correction board to correct a record needs access to final decisions of previous cases. In most other fields of American law, it is taken for granted that published decisions allow cases to be researched and presented well, decided consistently and transparently, and allow the law to develop over time. However, for military discharge and records correction law, a much different process is followed. Military administrative law decisions are published exclusively on the website where they sit unsorted in folders named only by branch, board and year. Every folder opens to a page with a long scrolling wall of file names, each containing a docket number, with a date and a file size and nothing else, even when a page holds thousands of files. For example, the Army correction board's folder for 2010 lists 9,247 files on a single page. Not a single one comes with a summary, and there is no index. The website looked the same when Congress enacted the summary-and-index requirement

in December 2024, and it has not changed since the requirement took effect. If what was already there satisfied the law, the amendment would have been unnecessary. A search returns a bare list of files that cannot be narrowed by year or issue or filtered in any meaningful way. A search for a decision's own docket number sometimes finds it, sometimes finds nothing and sometimes returns another veteran's decision. The boards publish final decisions in a variety of file formats, and many cannot be read in an internet browser at all and must be downloaded, one at a time, then opened with a separate program, one at a time.

6. A decision the public cannot find has not been made available to the public, and keeping the boards' decisions in this way violates both the text and the spirit of the law Congress passed. 10 U.S.C. § 1552(a)(5). The decisions are technically online, but in every practical sense they are hidden, and the law they make is hidden with them. Other adjudicators show that it need not be so. The Board of Veterans' Appeals, which decides benefits claims for the same veterans, publishes its decisions as plain text that anyone can search, without revealing any veteran's personally identifiable information, while naming the judge who decided each case. Its decisions can turn on what a correction board has done, because a discharge that a correction board upgrades "is final and conclusive on the Department of Veterans Affairs" and "sets aside any prior bar to benefits." 38 C.F.R. § 3.12(f). Yet the correction boards on whose decisions it often relies offer none of that openness. At the Board for Correction of Naval Records, even the decision-makers are secret. Its published decisions do not name the members who decided a case or say how each voted, and since 2015 the Navy has blacked out the name of the official who signs them. By keeping its decisions this way, in splendid isolation, the military shields its own conduct from scrutiny. Veterans cannot readily find relevant cases on the website, their lawyers cannot reliably advise them, and no one, including Congress and the courts, can truly tell

whether the boards are following the law and their own regulations. What is clear is that the Secretaries are not following § 1552(a)(5).

7. These failures are not new. The website has kept the same appearance since at least January 2005, more than twenty-one years ago. The Internet Archive holds 25 versions of its front page from then through April 2024, and every one carries the same two broken lines of code, as the front page still does. The text that screen-reading software speaks aloud to blind veterans in place of the Department of Defense seal has read "Offical DOD Seal" since at least August 2012.

**January 29, 2005** **October 30, 2026**




Figure 1. The front page of the website on January 29, 2005, as preserved by the Internet Archive (left), and on October 30, 2026 (right).

8. Congress enacted the summary-and-index requirement in December 2024. In July 2025 the Government Accountability Office found that the website was missing about 84 percent of the Army correction board's liberal-consideration decisions closed from January 2018 through March 2024, and about 81 percent of the Air Force correction board's. U.S. Gov't Accountability

Off., Military Discharge: Actions Needed to Help Ensure Consistent and Timely Upgrade Decisions, GAO-25-107354, tbl. 7, at 54 (July 24, 2025). The military departments had agreed in July 2024 to replace the website, but in April 2025 the Department could not give an anticipated date for it, and as of July 2025 it was not complete. GAO-25-107354, at 56–57. In January 2026, the Government Accountability Office reported, the Department's own officials stated that the law "requires that each final decision" of a correction board be made public "on a centralized website, including a summary of each decision, indexed by subject matter." GAO-25-107354, Recommendations 8–9 (status update, July 2026). In July 2026 the Department told the Government Accountability Office that the new website would include metadata and case summary criteria, and that it planned to complete it by October 2026, the month the summaries and the index became due. GAO-25-107354, Recommendations 8–9 (status update, July 2026). No new website had launched by October 1, 2026, and none has launched since.

9. The President has made the correction of unjust military discharges his own priority. He has found that "the military unjustly discharged" service members, declared that "Federal Government redress of any wrongful dismissals is overdue," and ordered the Secretary of Defense or the Secretary of Homeland Security, as appropriate, to "take all necessary action permitted by law" to redress them. Exec. Order No. 14184, §§ 1–2, 90 Fed. Reg. 8761 (Feb. 3, 2025) (discharges under the COVID-19 vaccination mandate). Carrying out that order, the Department of Defense directed its review boards to review, on their own motion, the records of service members separated for refusing the vaccine. The decisions sit on the website among thousands of others in the same folders, and veterans discharged over the vaccine have no summary or index to find the cases like their own. Searching the full text of its own Reading Room, the Institute found hundreds of these reviews in which the Air Force Discharge Review

Board granted relief, and six, all in 2026, in which it did not. In each of the six, the Board found that the refusal "was the sole reason for discharge," that "[t]here was no other misconduct," that the discharge "was inequitable," and that "the Veteran's DD-214 must be corrected," and then concluded that the case "did not meet the criteria requirements" and that "[t]he existing characterization of service will not change." Air Force Discharge Review Board Nos. FD-2026-00097, -00124, -00136, -00180, -00184, -00207. Without a summary, an index or a reliable way to search the decisions, no one can tell why.

10. The President has also made modernization of federal government websites his own priority. On September 29, 2026, two days before the summaries and the index came due, he signed an order announcing the creation of America.gov as "the unified digital front door" to the federal government. Exec. Order No. 14432, §§ 1, 4, 91 Fed. Reg. 63121 (Oct. 2, 2026). Neither that order nor anything since has changed the website, and whether the Secretaries missed the deadline Congress set by oversight or by choice does not matter. The failure injures veterans, their families, the Institute and its members, and the President directs the Secretaries who can end it. The Institute asks the Court to order the records produced, to compel the Secretaries to do what the law already requires, and to declare the duty the Constitution already places on the President.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the Administrative Procedure Act claims in Counts V and VI and, in the alternative, Count VIII. The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) to adjudicate Plaintiff's claims for agency records improperly withheld under the Freedom of Information Act, Counts I through IV and Count VIII. The Court also has

jurisdiction under 28 U.S.C. § 1361 over Count VII and the alternative claim in Count VI, each in the nature of mandamus to compel officers of the United States to perform the duties that 10 U.S.C. § 1552(a)(5) and their own regulations owe to Plaintiff. Count IX arises under the Constitution of the United States, and the Court has jurisdiction over it under 28 U.S.C. § 1331. The Court may grant the declaratory relief sought in Count IX under 28 U.S.C. § 2201 and any necessary or proper further relief under 28 U.S.C. § 2202.

12. Plaintiff seeks relief other than money damages against federal agencies and officers acting in their official capacities. The Freedom of Information Act authorizes the relief sought in Counts I through IV and Count VIII. Counts V and VI seek to compel federal officers to take discrete actions that statute and regulation require, relief available under 5 U.S.C. §§ 704, 706(1). In the alternative, Count VII and the alternative claim in Count VI seek the same relief under 28 U.S.C. § 1361. Count VIII also seeks, in the alternative, relief under 5 U.S.C. § 706(2). Section 702 of title 5 waives the United States' sovereign immunity for this action. That waiver reaches Count VII as well as Counts V and VI, because each seeks relief other than money damages and states a claim that officers of federal agencies failed to act in an official capacity. Count IX seeks only a declaratory judgment against the President in his official capacity, and no injunction or writ against him. Plaintiff does not rely on 5 U.S.C. § 702 for Count IX. A claim that an officer of the United States has failed to act as the Constitution requires is not barred by sovereign immunity, and no statutory waiver is required for it.

13. Declaratory and further appropriate relief are available under 28 U.S.C. §§ 2201–2202 in this actual controversy within the Court's jurisdiction. Those provisions supply remedies. Plaintiff does not rely on them as an independent jurisdictional grant.

14. Venue for the FOIA claims is proper under 5 U.S.C. § 552(a)(4)(B) because the Institute has its principal place of business in this District. Venue for the remaining claims, each of which is brought against federal agencies or federal officers in their official capacities, is proper under 28 U.S.C. § 1391(e)(1)(C), read with § 1391(c)(2), because the Institute resides in this District at its principal place of business and no real property is involved.

15. The Institute's headquarters and principal place of business are in South Jacksonville, Morgan County, Illinois. The Institute's registered office is there, and its President directs its research, its representation of veterans and this litigation from there. Plaintiff selects the Springfield Division because Morgan County is within that Division under C.D. Ill. Civil L.R. 40.1(B). In compliance with C.D. Ill. Civil L.R. 40.1(E)(3), Plaintiff states that its requested public-publication and indexing relief seeks to mandate nationwide enforcement of federal law, as described in Civil L.R. 40.1(E)(4)(b)(ii). Plaintiff seeks no statewide enforcement of state law under Rule 40.1(E)(4)(b)(i). Joinder of the Defendants is proper under Federal Rule of Civil Procedure 20(a)(2). The claims against them arise out of the same series of transactions or occurrences, the publication of the correction boards' decisions under 10 U.S.C. § 1552(a)(5) and the Institute's requests for records about that publication, and they present common questions of law and fact.

## PARTIES

16. Plaintiff Institute for Constitutional Military Law ("the Institute") is an Illinois not-for-profit corporation with its headquarters and principal place of business in South Jacksonville, Morgan County, Illinois. It is registered with the Attorney General of Illinois as a charitable organization. The Internal Revenue Service has recognized it as an organization described in section 501(c)(3) of the Internal Revenue Code, exempt from federal income tax,

effective September 24, 2026. The Institute is a membership organization. Under its bylaws, any person who supports its purposes may become a Member, including service members, veterans, their families and survivors, and others. Its Members include both individuals and a veterans service organization. Its Articles of Incorporation state that its purposes include advancing "public understanding and protection of the constitutional and legal rights of United States servicemembers and veterans through legal and historical research, publications, public education, publicly accessible archives and research tools concerning military law and military review and correction boards." The bylaws set annual dues, which the President may waive. Members receive the Institute's reports, are asked to provide their views on its priorities, and are represented by the Institute in advocacy, including litigation. The Institute represents service members and veterans before the military review boards pro bono, without charge, through its counsel. It also researches and publishes on the law governing military service and its review. It serves veterans of every branch and every era, regardless of discharge status, and it studies how every board operates and decides, including the discharge review boards and the boards for the correction of military records of the Army, the Navy and Marine Corps, the Air Force and the Coast Guard. It publishes the Institute's Reading Room, a public, searchable collection of the boards' published decisions that the Institute built and maintains.

17. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. The Constitution requires that he "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The Secretaries named below serve under his direction, and the duties described in Count V are laws he must see faithfully executed. The President is named in Count IX only, which seeks a declaratory judgment under Article II of the Constitution. He is

not named in any count under the Freedom of Information Act or in Counts V, VI and VII, and the Institute seeks no injunction and no writ against him.

18. Defendant United States Department of Defense is an agency within the meaning of 5 U.S.C. § 552(f)(1). It has possession, custody or control of the records Plaintiff requested in Requests 1 and 17.

19. Defendants Department of the Army, Department of the Navy and Department of the Air Force are military departments and agencies within the meaning of 5 U.S.C. § 552(f)(1). Each has possession, custody or control of records Plaintiff requested. The Institute sent Requests 2, 9 and 18 to the Department of the Army's FOIA office, Requests 3, 8 and 10 to the FOIA office of the Board for Correction of Naval Records, Requests 4, 11 and 15 to the Department of the Navy's central FOIA office, and Requests 5, 12 and 19 to the Department of the Air Force's FOIA office.

20. Defendant United States Department of Homeland Security is an agency within the meaning of 5 U.S.C. § 552(f)(1). The United States Coast Guard is a component of it. The Institute submitted Requests 6 and 13 to the Coast Guard's FOIA office and Requests 7 and 14 to the Department's Privacy Office, because the Board for Correction of Military Records of the Coast Guard "is established in the Office of the Secretary of Homeland Security," 33 C.F.R. § 52.11(a), all through the Department's SecureRelease portal.

21. Defendant the Secretary of Defense is sued in an official capacity. Subject to the direction of the President, the Secretary has authority, direction and control over the Department of Defense, and the Secretaries of the Army, the Navy and the Air Force act subject to that authority. 10 U.S.C. §§ 113(b), 7013(b), 8013(b), 9013(b). The correction boards of all three

military departments publish their decisions through the website, one centralized site operated under Department of Defense guidance. GAO-25-107354, at 55–56. No single military department can perform the duties of § 1552(a)(5) on the website for the others. The Secretary of Defense is named because relief on the website cannot be complete without him. His own office has directed the effort to carry out § 1552(a)(5). The Office of Legal Policy, in the Office of the Under Secretary of Defense for Personnel and Readiness, told the members of the Board for Correction of Naval Records that it "is working with Military Department POCs to implement the new statutory requirements by October 2026," and the Board answered the Institute that "[t]he DOW interprets and implements this requirement as a centralized website for the publication of decisions from all of the Boards."

22. Defendants the Secretary of the Army, the Secretary of the Navy and the Secretary of the Air Force are sued in their official capacities. Each acts through a board for the correction of military records under 10 U.S.C. § 1552(a)(1) and is responsible for publishing that board's final decisions under § 1552(a)(5).

23. Defendant the Secretary of Homeland Security is sued in an official capacity. The Secretary corrects the records of the Coast Guard through the Board for Correction of Military Records of the Coast Guard under 10 U.S.C. § 1552(a)(1), and is responsible for publishing that board's decisions under § 1552(a)(5). 33 C.F.R. § 52.81.

**The Institute's members**

24. Anthony D. Riddle, of Michigan, is a member of the Institute and one of its directors. He is an honorably discharged Marine who was wounded in combat and awarded the Purple Heart. Like every veteran, he has the right to apply to the Board for Correction of Naval

Records to correct an error or remove an injustice in his military record. 10 U.S.C. § 1552(a)(1), (b). To know whether and when to apply, and how to present a claim, he must be able to find how the Board has decided cases like his. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, he cannot reliably find those cases. He would have standing to sue in his own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires his participation.

25. Kyle E. Cady, of North Carolina, is a member of the Institute and one of its directors. He is an honorably discharged Marine. Like every veteran, he has the right to apply to the Board for Correction of Naval Records to correct an error or remove an injustice in his military record. 10 U.S.C. § 1552(a)(1), (b). To know whether and when to apply, and how to present a claim, he must be able to find how the Board has decided cases like his. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, he cannot reliably find those cases. He would have standing to sue in his own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires his participation.

26. John Roselli, of California, is a member of the Institute. He is a Marine veteran of the Vietnam era. On November 3, 2026, the Institute filed his petition to the Board for Correction of Naval Records to upgrade his discharge to Honorable, and it remains pending. He and his counsel still need to find how the Board has decided cases like his, including the cases involving the Presidential Clemency Program, to answer any advisory opinion the Board obtains, to respond if the Board denies relief, and to seek further review. Because no posted decision carries

a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, neither he nor his counsel can reliably find those cases. The Board decided his earlier applications in 2020 and 2022, and the copies the Navy published do not show who decided them. He would have standing to sue in his own right. Making the boards' decisions findable by subject, and making public who decides them, is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires his participation.

27. Joanne D. Mills, of Florida, is a member of the Institute. She is the widow of Peter G. MacRoberts, a Navy veteran who enlisted in 1969, at the height of the Vietnam War, and received an Undesirable discharge, now called an Other Than Honorable discharge, over marijuana in 1971. The Naval Discharge Review Board denied his application in January 1975, and again in November 1977. In February 1978 the Navy told him that his service records could not be located. In December 1978 he took his own life. After his death, Ms. Mills asked the Naval Discharge Review Board in 1981, and the Board for Correction of Naval Records in 2017, to correct his record. Both denied her. Under an engagement she signed on October 10, 2026, the Institute represents her without charge through its counsel. Institute counsel is preparing her petition, as Mr. MacRoberts's widow, to the Board for Correction of Naval Records to correct her late husband's military record, and it will be filed in the coming weeks. 10 U.S.C. § 1552(a)(1), (b). To present that petition, she and her counsel must be able to find how the Board has decided similar cases. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, neither she nor her counsel can reliably find those cases. She would have standing to sue in her own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires her participation.

28. Dr. Britt Stuessy, of Minnesota, is a member of the Institute and a Navy veteran. In 2025 the Naval Discharge Review Board upgraded her discharge from Other Than Honorable to Honorable. Like every veteran, she has the right to apply to the Board for Correction of Naval Records to correct an error or remove an injustice in any part of her military record. 10 U.S.C. § 1552(a)(1), (b). To know whether and when to apply, and how to present a claim, she must be able to find how the Board has decided cases like hers. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, she cannot reliably find those cases. She would have standing to sue in her own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires her participation.

29. Garry C. Monk, of Connecticut, is a member of the Institute. He is an honorably discharged Air Force veteran and the Executive Director of the National Veterans Council for Legal Redress. Like every veteran, he has the right to apply to the Air Force Board for Correction of Military Records to correct an error or remove an injustice in his military record. 10 U.S.C. § 1552(a)(1), (b). To know whether and when to apply, and how to present a claim, he must be able to find how the Board has decided cases like his. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, he cannot reliably find those cases. He would have standing to sue in his own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires his participation.

30. The National Veterans Council for Legal Redress is a member of the Institute, and the Institute is a member of the Council. The Council is a veterans service organization in New Haven, Connecticut, founded in 1982 by two brothers, Conley F. Monk Jr., a Marine veteran of

the Vietnam War, and Garry C. Monk, an Air Force veteran and its Executive Director. Like the Institute, it is a membership organization and a public charity recognized by the Internal Revenue Service under section 501(c)(3). Its members are veterans, and its membership is open to veterans of every discharge status, including veterans with Other Than Honorable discharges. It helps veterans apply to upgrade their discharges. To help them, the Council must find how the military review boards have decided cases like theirs. Because no posted decision carries a summary, no index by subject exists, and the website's search cannot be narrowed by issue and fails to find decisions that exist, it cannot reliably find those cases. It would have standing to sue in its own right. Making the boards' decisions findable by subject is germane to the Institute's purposes. Neither the Institute's claims nor the relief it seeks requires its participation.

31. Each individual member identified above joined the Institute voluntarily and in writing between October 9 and October 31, 2026, with dues waived, and stated in writing that the member supports the Institute's purposes. The two directors' memberships are separate from their positions on the Board. Each member named in this Complaint has consented in writing to being named, and has consented to the facts alleged about the member.

## LEGAL FRAMEWORK

### The Freedom of Information Act

32. The Act requires each agency, on a request that reasonably describes records and is made under the agency's published rules, to make the records "promptly available." 5 U.S.C. § 552(a)(3)(A). The agency must determine within 20 working days whether it will comply, and notify the requester. 5 U.S.C. § 552(a)(6)(A)(i). A requester is deemed to have exhausted administrative remedies when the agency fails to comply with that time limit. 5 U.S.C. § 552(a)(6)(C)(i). In "unusual circumstances," an agency may extend that time by written notice

"setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). The "exceptional circumstances" that may justify further time do not include "a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

33. The Act separately requires each agency to make available for public inspection in electronic format "final opinions … as well as orders, made in the adjudication of cases." 5 U.S.C. § 552(a)(2)(A).

34. Each final decision of a board for the correction of military records is such a final opinion or order. It is the Secretary's final action on a veteran's application, and it decides whether the record stands or is corrected, whether a missing medal or ribbon is added, whether a characterization of service remains less than honorable, whether a narrative reason or reenlistment code is changed, whether missing deployments are included, whether adverse entries are removed, whether a veteran injured in service receives a disability retirement, and, for a veteran discharged by court-martial, whether clemency is granted. 10 U.S.C. §§ 1201, 1204, 1552(a)(1), (f). Each is an "order," which the Administrative Procedure Act defines as "the whole or a part of a final disposition" of an agency, and the board's process for reaching it is an "adjudication," "agency process for the formulation of an order." 5 U.S.C. § 551(6), (7). A correction made through the boards "is final and conclusive on all officers of the United States except when procured by fraud." 10 U.S.C. § 1552(a)(4)(A). The boards' final decisions are reviewable as final agency action. 5 U.S.C. §§ 702, 704, 706. The Act has also long required every agency, the boards included, to maintain current indexes of its final opinions. 5 U.S.C. § 552(a)(2).

**The publication duty for the correction boards**

35. For records created on or after November 1, 1996, the Freedom of Information Act has required agencies to make final opinions and orders in the adjudication of cases available by electronic means. 5 U.S.C. § 552(a)(2), as amended by the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, § 4(7), 110 Stat. 3048, 3049 (1996). The Act requires agencies to make those decisions public so that no agency can govern by secret law. Since 2016 a separate statute has also required the Secretaries to publish each final decision of their correction boards on a centralized website, with personally identifiable information redacted. 10 U.S.C. § 1552(a)(5) (as in effect before October 1, 2026); added by Pub. L. 114-328, div. A, tit. V, § 534(b), 130 Stat. 2000, 2122 (Dec. 23, 2016).

36. Effective October 1, 2026, Congress added that "[t]he information provided shall include a summary of each decision, to be indexed by subject matter." 10 U.S.C. § 1552(a)(5), as amended by Pub. L. 118-159, § 523(a). Congress enacted the amendment as section 523 of the defense authorization act for fiscal year 2025, under the heading Improving Military Administrative Review. Pub. L. 118-159, § 523 (section heading); see S. Rep. No. 118-188, at 129 (2024) ("Improving military administrative review (sec. 528)").

37. Congress enacted the amendment on December 23, 2024, and delayed its effect until October 1, 2026, giving the Secretaries more than twenty-one months to prepare. Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. 118-159, § 523(b).

38. The word Congress chose is "shall." Whether to correct a particular record is a discretionary decision Congress left to the Secretary, who "may correct" a record when the

Secretary considers it necessary. 10 U.S.C. § 1552(a)(1). Congress left no such discretion, however, over how corrections are made or what becomes of the decisions. Corrections "shall be made by the Secretary acting through boards of civilians," 10 U.S.C. § 1552(a)(1)–(2), and each final decision "shall be made available to the public," with information that "shall include a summary of each decision, to be indexed by subject matter." 10 U.S.C. § 1552(a)(5).

39. The Secretaries of the Navy, the Army and Homeland Security have by their own regulations already required subject indexes of their correction boards' decisions. The Navy's rule for the Board for Correction of Naval Records requires that decisions be "indexed in a usable and concise form so as to enable the public to identify those cases similar in issue together with the circumstances under and/or reasons for which the Board and/or Secretary have granted or denied relief," and that "[t]he index shall be published quarterly." 32 C.F.R. § 723.11(b)(2). The Army's rule requires that "a redacted copy of each decision will be indexed by subject." 32 C.F.R. § 581.3(i)(2)(i). The Air Force's rule requires that its board's decisions be made available in an electronic public reading room. It does not itself prescribe a subject index. 32 C.F.R. § 856.7(c) (so numbered in the Code of Federal Regulations, in part 865 between §§ 865.6 and 865.8). The rule for the Board for Correction of Military Records of the Coast Guard requires that "a redacted copy of each final decision shall be indexed by subject and made available for review and copying at a public reading room," and that final decisions created on or after November 1, 1996, "shall be made available by electronic means." 33 C.F.R. § 52.81. The decisions of the discharge review boards are governed by a separate Department of Defense regulation, which requires that each decision carry "[i]ndex entries for each decisional issue under appropriate categories listed in the index of decisions." 32 C.F.R. § 70.8(h)(14); see id. §§ 70.4(b)(4), 70.8(l)(4).

## FACTS

**The requests**

40. Before it incorporated, the Institute for Constitutional Military Law operated under that name as an unincorporated association consisting of the persons who now serve as its directors, and others. On September 23, 2026, the Institute submitted the requests described below from foia@icml.us, each naming the Institute for Constitutional Military Law as the requester. The requests went to the Department of Defense, to each military department and to the Department of Homeland Security. Each request states that the Institute makes it on its own behalf. Plaintiff was incorporated under the same name on September 24, 2026, under the Illinois General Not For Profit Corporation Act. On September 26, 2026, Plaintiff's board of directors adopted and ratified each request as Plaintiff's own and resolved that Plaintiff succeeds to the rights and obligations of the unincorporated association under them. The corporation carries on the association's work under the same name, with the same founder, the same mailing address and the same email address, and each agency that has answered a request has corresponded with the Institute, at that address, as the requester. On September 30, 2026, the Institute submitted Request 17 to the Department of Defense, Request 18 to the Department of the Army and Request 19 to the Department of the Air Force, each by email. Plaintiff is a "person," a term that includes both a corporation and an association, 5 U.S.C. § 551(2), and the requester of each request under 5 U.S.C. § 552(a)(3)(A).

41. The requests are listed in the following table.

| Request | Agency | Subject | Sent | Tracking no. |
|---|---|---|---|---|
| 1 | Department of Defense (Office of the Secretary of Defense and Joint Staff) | Implementation of 10 U.S.C. § 1552(a)(5) (summaries and subject index) | Sept. 23, 2026, by email | 26-F-3360 |
| 2 | Department of the Army | Army Review Boards Agency; the website | Sept. 23, 2026, by email | None assigned |
| 3 | Department of the Navy (BCNR) | Summaries and subject index of decisions | Sept. 23, 2026, by email | DON-BCNR-2026-000127 |
| 4 | Department of the Navy (NDRB) | Naval Discharge Review Board publication and index | Sept. 23, 2026, by email | 2026-NavyFOIA-012446 (appeal 2027-NavyAPPEAL-000011) |
| 5 | Department of the Air Force | Air Force Review Boards Agency; Discharge Appeal Review Board; hosting of boards.law.af.mil | Sept. 23, 2026, by email | Acknowledged Oct. 29, 2026, as described below |
| 6 | Department of Homeland Security (Coast Guard DRB) | Coast Guard Discharge Review Board | Sept. 23, 2026, by portal | 2026-CGFO-04536 |
| 7 | Department of Homeland Security (Coast Guard BCMR) | Board for Correction of Military Records of the Coast Guard | Sept. 23, 2026, by portal | 2026-HQFO-03985 |
| 8 | Department of the Navy (BCNR) | Training of board members and staff | Sept. 23, 2026, by email | Assigned Oct. 19, 2026, as described below |
| 9 | Department of the Army | Final decisions of the ABCMR and ADRB not made available to the public | Sept. 23, 2026, by email | None assigned |
| 10 | Department of the Navy (BCNR) | Final decisions not made available to the public | Sept. 23, 2026, by email | Assigned Oct. 19, 2026, as described below |
| 11 | Department of the Navy (NDRB) | Final decisions not made available to the public | Sept. 23, 2026, by email | None assigned |
| 12 | Department of the Air Force | Final decisions of the Air Force boards, PDBR and DARB not made available to the public | Sept. 23, 2026, by email | Acknowledged Oct. 29, 2026, as described below |
| 13 | Department of Homeland Security (Coast Guard DRB) | Final decisions not made available to the public | Sept. 23, 2026, by portal | 2026-CGFO-04545 |
| 14 | Department of Homeland Security (Coast Guard BCMR) | Final decisions not made available to the public | Sept. 23, 2026, by portal | 2026-HQFO-03988 |

| | | | | |
|---|---|---|---|---|
| 15 | Department of the Navy (BCNR) | Expedited, "SECNAV interest" and Secretarial-review cases | Sept. 23, 2026, by email | 2026-NavyFOIA-012450 |
| 17 | Department of Defense (Office of the Secretary of Defense and Joint Staff) | Department of Defense CIO website records for boards.law.af.mil (21st Century IDEA reports, website inventory, assessments) | Sept. 30, 2026, by email | 26-F-3400 |
| 18 | Department of the Army | Website records for boards.law.af.mil (assessments, section 508 reviews, analytics code, traffic data, 21st Century IDEA submissions) | Sept. 30, 2026, by email | None assigned |
| 19 | Department of the Air Force | The planned replacement for the website and its hosting (July 2024 agreement, requirements and statement of work, compliance and section 508 tests, launch date, hosting agreement) | Sept. 30, 2026, by email | Acknowledged Oct. 29, 2026, as described below |

42. The Institute sent Requests 1, 2, 3, 4, 5, 8, 9, 10, 11, 12 and 15 by email on September 23, 2026. It submitted Requests 6, 7, 13 and 14 through the Department of Homeland Security's SecureRelease portal the same day, and the portal lists them under numbers 2026-CGFO-04536, 2026-HQFO-03985, 2026-CGFO-04545 and 2026-HQFO-03988. It sent Requests 17, 18 and 19 by email on September 30, 2026. Requests 17, 18 and 19 ask the Department of Defense, the Department of the Army and the Department of the Air Force for their records about the website itself, including its assessments and reports under the 21st Century Integrated Digital Experience Act, Pub. L. 115-336, and the July 2024 agreement for a new website. Request 16, to the Department of the Navy, concerned the Naval Discharge Review Board's online submission portal. The Department closed it on September 28, 2026, stating that it did not reasonably describe the records sought, and it is not included in any Count.

43. The Department of the Army sent automatic acknowledgments of Requests 2 and 9 on September 23, 2026, and an automatic reply to Request 18 on September 30, 2026, none

with a tracking number, and the Board for Correction of Naval Records sent an automatic acknowledgment of Request 3 on September 23, 2026. The Office of the Secretary of Defense recorded Request 1 as received on September 24, 2026, under number 26-F-3360, and acknowledged Request 17 on September 30, 2026, under number 26-F-3400. The Department of the Navy's FOIA portal recorded Request 4 as received on September 24, 2026, under number 2026-NavyFOIA-012446, and Request 15 under number 2026-NavyFOIA-012450, which it transferred to the Board for Correction of Naval Records. None of these acknowledgments is a determination under the Act.

44. The agencies have handled the requests in very different ways, although the Institute asked each agency for the same kinds of records. By letter dated September 29, 2026, the Office of the Secretary of Defense denied expedited processing of Request 1, asserted "unusual circumstances," placed the request in its "complex processing queue," reported an "administrative workload" of "approximately 3,793 open requests," and gave no date for a decision. On October 8, 2026, the same office sent the same kind of letter on Request 17. It again asserted "unusual circumstances," again placed the request in its "complex processing queue," reported a workload of "approximately 3,576 open requests," and again gave no date for a decision. The Department of Homeland Security's Privacy Office treated the Institute as a representative of the news media, conditionally granted a fee waiver on Request 7, and took ten more working days without stating a date for a decision. On Request 14 it applied the same fee category and took no extension. On September 29, 2026, the Board for Correction of Naval Records denied expedited processing of Request 3 because the request "is extensive and intertwined with multiple other request[s]." On October 1, 2026, the Secretary of the Navy Council of Review Boards answered Request 4. It stated, as to three items, "At this time, we do

not have records responsive to this request," described no search, and produced nothing. Asked for the categories of the Naval Discharge Review Board's index, it stated that "[w]ithin the reading room, case records are categorized by Service Branch and Year." The Institute appealed on October 7, 2026, and the appeal was assigned number 2027-NavyAPPEAL-000011. The Department of the Army has sent only automatic acknowledgments. The Institute sent Requests 5, 12 and 19 by email to the Department of the Air Force's FOIA mailbox on September 23 and 30, 2026, followed up by email on October 16, 2026, sent the same requests by certified mail to the Department's FOIA office at the Pentagon on October 17, 2026, and sent them again by email on October 18, 2026, to the Headquarters Air Force FOIA office. The Department of the Air Force acknowledged none of them until October 29, 2026, when its Headquarters FOIA office acknowledged the requests re-sent on October 18, 2026, under numbers AF 2027-00539-F, AF 2027-00540-F and AF 2027-00541-F. It has made no determination on any of them.

45. On October 19, 2026, the Board for Correction of Naval Records answered Requests 3, 8, 10 and 15 in a single letter. It assigned Requests 8 and 10 the numbers DON-BCNR-2026-000128 and DON-BCNR-2026-000129, without stating which number belongs to which request, stated that the four requests "are closely related and contain overlapping inquiries" and that it was "handling the search for the requested records as one request," placed the Institute in the "All other Requesters" fee category without stating a reason, denied a fee waiver, estimated fees of $1,200, and placed all four requests "on hold pending your approval of the DD Form 2086 or receipt of narrowed requests." The four requests seek different records. The Institute appealed the denial of expedited processing of Request 3 to the Office of the Judge Advocate General of the Navy on October 1, 2026. On October 26, 2026, that office granted the appeal (No. 2027-NavyAPPEAL-000050) and directed the Board to make a new

determination on expedited processing within ten calendar days. On October 19, 2026, the Institute appealed the fee category, the denial of a fee waiver, the fee estimate and the combination of the four requests to the same office, which acknowledged the fee appeal on October 21, 2026. That appeal has not been decided. On November 5, 2026, the last of the ten days, the Board denied expedited processing of Request 3 again. Its letter acknowledged that the Institute had certified that it is "primarily engaged in disseminating information and that there is an urgency to inform the public concerning actual or alleged federal government activity," the ground for expedited processing provided by 5 U.S.C. § 552(a)(6)(E)(v)(II), and the only ground Request 3 invoked. The Board gave two reasons for its denial. First, it wrote that "as indicated on the ICML website, the purpose of ICML is helping veterans before boards, in the courts, and Congress." Second, it found that the Institute "did not demonstrate a compelling need explaining how not having this information would pose an imminent threat to the life or physical safety of any individual," which is the separate ground provided by 5 U.S.C. § 552(a)(6)(E)(v)(I), one the Institute never asserted. The Board did not address the urgency to inform the public, which concerns the Board's own compliance with a statutory duty that took effect on October 1, 2026. Its letter also advised that an appeal "may only concern whether our office has provided you an adequate response to your FOIA/PA request (i.e. a challenge to the adequacy of the search)," although the Act provides for the expeditious consideration of administrative appeals of decisions on expedited processing, and for judicial review of those decisions. 5 U.S.C. § 552(a)(6)(E)(ii)(II), (iii). The same day, without mentioning the fees, the Board issued a final response to each of the four requests, and the Institute appealed the response to Request 8.

46. As of the filing of this Complaint, no Defendant agency has made a determination on any request identified in Count I, and the time to do so has expired. 5 U.S.C. §

552(a)(6)(A)(i). The Department of the Navy made a determination on Request 4 on October 1, 2026. The Institute appealed it on October 7, 2026, and the time for a decision on the appeal has expired without one. 5 U.S.C. § 552(a)(6)(A)(ii).

**The website**

47. The Department of Defense titles the website "Boards of Review Reading Rooms" and describes it as "for public research." Boards of Review Reading Rooms, U.S. Dep't of Def., boards.law.af.mil.

48. The website's front page contains no search bar and no description of any decision. It lists email addresses and links to folders by service.

49. As archived on July 6, 2005, the front page offered a search bar, with a menu to choose which board's decisions to search. By April 20, 2024, the search bar was gone. The front page as archived that day is identical, byte for byte, to the front page on October 1, 2026, and the website's server reports that the page was last modified on March 11, 2024.

50. The condition of the website bears directly on the Secretaries' duty under 10 U.S.C. § 1552(a)(5) and, more fundamentally, on whether the boards' final administrative law decisions, which decide veterans' rights, are public in any practical sense. That section requires that each final decision be made available to the public on a centralized website, and that the information provided there include a summary of each decision, indexed by subject matter. The website is where those summaries and that index must appear. They exist "to enable the public to identify those cases similar in issue." 32 C.F.R. § 723.11(b)(2). They can serve that purpose only on a website the public can use. The Department of Defense's own rules for its public websites require that information be "searchable and discoverable," that a public website "contain a search

function that allows users to easily search content intended for public use," that websites be optimized for mobile devices and meet accessibility standards, and that each be assessed for compliance at least once a year. DoD Instruction 8170.01, ¶¶ 2.7.m, 3.4.d, 3.22, 3.34.a–b (Jan. 2, 2019, incorporating Change 2, Mar. 12, 2025). Those rules are not the source of the duty in this case. They show the standard the Department set for itself, and how far the website falls short of it.

51. The website has kept the same appearance since at least January 2005. More than twenty-one years later, its front page carries the same title, seal, flag background and folder-icon links. It lacks basic features the Department's own rules require. It runs none of the analytics code the Department requires on all of its public websites, and its front page gives no postal address or telephone number and has no "Contact Us" page. DoD Instruction 8170.01, ¶¶ 3.12, 3.14. It carries no banner identifying it as an official website of the United States government, and it contains no instruction that lets the page fit the screen of a phone. The website's appearance and interface are at least two years older than the iPhone, which Apple introduced in January 2007. Despite its importance to veterans and its legal significance, it looks like a website the United States government forgot.

52. The General Services Administration scans federal websites and publishes what it finds. Its scan of the website, dated October 30, 2026, recorded the following. U.S. Gen. Servs. Admin., Site Scanning, record for boards.law.af.mil (scan dated Oct. 30, 2026).

| **What the scan checks** | **Result for the website** |
|---|---|
| Owner | Department of Defense, Air Force |
| Code for the federal Digital Analytics Program | Not present |
| Setting that sizes the page for phones | Not present |
| Banner identifying an official website of the United States government | Not present |
| Search function on the front page | Not present |
| Elements of the U.S. Web Design System | None |
| File that tells search engines how to index the site (robots.txt) | Not found |
| Map of the site for search engines (sitemap) | Not found |

53. The website's code shows its age. For more than twenty years, its front page has carried the same broken code, and it still does. Its style instructions direct that links appear in "navy" and turn "green" when a reader points at them. Because the colors are written inside quotation marks, which the rules for web style sheets do not allow, browsers discard both instructions. The links appear in the browser's default color and never change. The same instructions, with the same error, appear in the copy of the page that the Internet Archive preserved on January 29, 2005. The Internet Archive holds 25 different versions of the front page from January 2005 through April 2024, and every one contains the same two broken lines of code. By August 2012 someone had added correctly written instructions for the page background directly beneath those two lines and left them as they were. The errors are elementary. The standard for web style sheets has never allowed a color to be written in quotation marks, and that rule dates to the standard's first version in 1996. The front page also declares no document type, so browsers display it in the compatibility mode they keep for pages written before modern web standards.

54. The page is not built for every veteran who needs it. It does not declare the language in which it is written, which screen-reading software for blind readers relies on to pronounce its text. The federal accessibility standards for agency websites require that it do so. 36 C.F.R. pt. 1194, app. A, E205.4 (incorporating Web Content Accessibility Guidelines 2.0, Success Criterion 3.1.1). The General Services Administration's scan of the website recorded the same failure. The page carries no instruction for display on a phone, so a phone shows the whole desktop page shrunk to fit its screen. The Department's own rules require it to "[i]nclude mobile optimization in new, updated versions" of its online services. DoD Instruction 8170.01, ¶ 3.22. Even the text that screen-reading software speaks aloud in place of the Department of Defense seal has been misspelled, "Offical DOD Seal," since at least August 2012.

55. In 2018 Congress directed every executive agency to review each of its public websites within one year and to report to Congress which of them were most viewed or otherwise important for public engagement, which needed modernizing, and at what cost and on what schedule. 21st Century Integrated Digital Experience Act, Pub. L. 115-336, § 3(b), 132 Stat. 5025, 5026 (2018). The Department of Defense's report, in March 2020, listed ten websites, those with "the highest traffic in 2019" as measured by the General Services Administration's Digital Analytics Program. The website for the boards' decisions was not among them, and the report did not say why. The reason is simple, and anyone with a web browser can confirm it. The Digital Analytics Program counts a website's visitors only if the website carries the program's counting code. The Department's own rules require that code for counting visitors "on all public DoD websites." DoD Instruction 8170.01, ¶ 3.12. The website for the boards' decisions carried no counting code in 2019 or 2020 and carries none today. As a result, not one visitor was counted. It is entirely possible that the website drew more visitors than any website on the list,

and yet the Department's report could not have shown it. The report recited that the Act called for the Department's "most-viewed or... otherwise important" public websites, yet it listed only websites the program had counted and named none as "otherwise important." It did not tell Congress that some of the Department's public websites carried no counting code, that visitors went uncounted on those sites, or that the Department would add the counting code to them to allow more accurate reporting to Congress. It has not added the code to the website since. The same Instruction requires all public Defense Department websites to comply with the federal government's published website standards. Id. ¶ 3.31. The website uses none of them. Nor does the website help veterans find what it holds. It offers search engines like Google and Bing no sitemap, the file by which a website lists its pages for indexing, and, as alleged below, its own search fails to locate decisions it has published. Under the Freedom of Information Act, the Institute asked the Department for its review of the website and for its reports under the 21st Century Integrated Digital Experience Act (Request 17). The Department has produced none of them.

56. These facts bear on the duty under § 1552(a)(5) in four ways. First, they show that the absence of the summaries and the index is not a lapse of a few weeks. In twenty-one years, the front page has changed only in small ways, apart from the removal of its search bar. The 25 versions the Internet Archive preserved show little more than new email addresses, new links and, by February 2024, a board's name corrected from "Apeal" to "Appeal." Every version kept the same two broken lines of code, and the label read aloud to blind readers has stayed misspelled for fourteen years. The website was never counted or listed for modernization.

57. Second, § 1552(a)(5) requires that the decisions, and with them the summaries and the index, be made available to the public on the website. A website that shows a phone user

the whole desktop page shrunk to fit the screen, that fails the federal accessibility standard for blind readers, and whose own search cannot find its decisions does not make information fully available to the veterans who need it.

58. Third, nothing on the website, before or after October 1, 2026, shows any step toward a summary of any decision or an index of any kind, and twenty-one years of edits to the front page added neither. Nor does the duty require a new website. The Department added a page of board statistics in 2018 and a page of reports to Congress by 2022. It could have added summaries and an index the same way.

59. Fourth, the summaries and the index are among a series of requirements, from Congress and from the Department's own rules, that the website has not met. Since 1996 the Freedom of Information Act has required that the boards' decisions be available electronically, and the Department's own rules have long required an index of the discharge review boards' decisions. 5 U.S.C. § 552(a)(2); 32 C.F.R. § 70.8(l)(4). Since 2016 a statute has required that the correction boards' decisions be published on the website. 10 U.S.C. § 1552(a)(5). In 2018 Congress required the Department to review and modernize its public websites, and the Department's own rules require that its public websites count their visitors, offer search, meet accessibility standards and display on phones. Pub. L. 115-336, § 3; DoD Instruction 8170.01, ¶¶ 3.2, 3.12, 3.22, 3.34. None of these basic requirements has been fully carried out on the website. The website's history gives no reason to expect that the Secretaries will perform the duty Congress imposed without an order of this Court, or that the President will take care that it is faithfully executed without a declaration of this Court.

60. Within each board, decisions are grouped in folders by year. A year folder lists each file by name, with a date and a file size, and nothing more. The Board for Correction of Naval Records' 2023 list, for example, runs to 3,511 entries, each like "NR20230002305_Redacted.pdf 11-01-2023 253 Kb," which is the board's decision in "Docket No. 2305-23." It gives no outcome, no issue and no summary. There is no index. Each list looks like a bare directory of computer files, not a page of a modern website operated by the United States of America in service to its military veterans. The folders are not kept consistently. The Naval Discharge Review Board's page lists a folder "2015_ Navy," with a space, beside a folder "2015_Navy," and a folder "2021_navy" beside "2021_Navy." Some file names are malformed, among them "ND22 03314 .rtf" and "ND22- 2373.rtf."

61. The Institute built custom software so that the boards' decisions could be studied as a body of law, not one file at a time. Writing and running that software required a computer's command line, optical character recognition to read decisions posted only as images, and several artificial intelligence systems to write, run and check the programs, all directed by an attorney over many days. With it, the Institute collected, converted and analyzed more than 300,000 decisions and published them in its own Reading Room, described below, free to veterans, scholars, courts and Congress. On October 1, 2026, it used the same software to examine the website, reading the boards' public lists and the files those lists link. The website offers the public no such tool. The lists of the eight boards and the Physical Disability Board of Review linked 310,394 files in the formats used for decisions. Of these, 95,946, nearly one in three, were published as Rich Text Format files, 13,293 were Microsoft Word files, 130,597 were plain-text files, 70,507 were PDF files and 51 carried the extension ".bin." Of the 37,617 files on the Naval Discharge Review Board's lists, 36,377 were Rich Text Format files, while every file on the lists

of the Coast Guard's two boards was a PDF. On October 1 and again on October 21, 2026, a human tester who opened decisions in each format found that Rich Text Format and Word macro files downloaded to her computer and had to be opened separately, one at a time, while PDF and plain-text files opened in the browser. An automated check of 282 decision files on September 26, 2026, repeated on November 2, 2026, showed why. The website identified each of the 144 Word and Rich Text decisions in the sample as a document to download, not as a page to read, so a browser without a separate viewer downloads it rather than showing it.

62. Beyond the formats described above, some decisions are mislabeled and some have no text at all. Of the 51 ".bin" files on the Air Force Board for Correction of Military Records' lists, each of the 47 checked on September 26, 2026, is a PDF that the website serves as an unidentified binary file, with nothing on the website to say so. Other decisions are only pictures of their pages. In a sample of 40 PDF decisions examined on September 26, 2026, three were image-only, among them a 2025 decision of the Air Force board. A decision written on a computer begins as text. Posted as a picture of its pages, it loses that text, and with it any chance of being found by a search engine or read aloud by a screen reader. Removing a veteran's identifying details does not require turning a decision into a picture.

63. Some decisions are posted in folders nested inside other folders of the same name. The Board for Correction of Naval Records' 2005 and 2007 folders each contain a second folder of the same name, holding 108 and 611 files, and the Naval Discharge Review Board's 2015 Marine Corps folder lists four decisions and a second folder of the same name holding 704 more files. On October 1, 2026, searches for one decision from each of these nested folders, by its docket number, returned no results. To reach the 1,423 decisions in those folders by browsing, a veteran must open a folder that bears the same name as the one already open.

64. At least one decision is posted under the wrong docket number and in the wrong year's folder. The file the website names as Board for Correction of Naval Records docket 4566-20, in its 2020 folder, contains the board's decision in docket 4566-21, which states that the board considered the application on October 7, 2021. On October 1, 2026, a search of that board's decisions for 4566-21 returned "Sorry, no results found for '4566-21'."

**The website's search**

65. The page of each of the eight boards carries a search bar headed "Enter Search Term(s):". On a board's page, the search is limited to that board. There is no way to limit a search to a year, an outcome or an issue.

66. On October 1, 2026, the Institute tested the search, and on October 21, 2026, it ran the same searches again. Both times, the search failed to find decisions by their own docket numbers, returned other veterans' decisions in their place, and missed most of the decisions containing a term as common as "PTSD."

| **Search** | **October 1, 2026** | **October 21, 2026** |
|---|---|---|
| The docket number of a Naval Discharge Review Board decision, ND22-01106 | "Sorry, no results found" | "Sorry, no results found" |
| The docket number of a Board for Correction of Naval Records decision that the search has indexed, NR20230002305 | "No results found," followed by the decision of a different veteran, NR20230007305 | "No results found," followed by the decision of a different veteran, NR20230002307 |
| The docket number of a Board for Correction of Naval Records decision posted as plain text, 4566-20 | "Sorry, no results found" | "Sorry, no results found" |
| The docket number of an Army decision, AR20110000002 | The decision of a different veteran | The decision of a different veteran |
| "PTSD," Naval Discharge Review Board | 211 results | 213 results |
| "PTSD," Board for Correction of Naval Records | 2,901 results | 2,904 results |
| "PTSD," all boards | 11,600 results | 11,607 results |

67. The Institute also counted how many decisions actually contain the term. Using the software described above, it extracted the text of the files the boards' lists linked on October 1, 2026, and checked the result by extracting the text a second time with different tools. The text the boards themselves posted contains the term "PTSD" in at least 13,085 Naval Discharge Review Board files, at least 5,257 Board for Correction of Naval Records files and at least 44,023 files of the six Army, Navy and Marine Corps, and Air Force boards. On the same day, the website's search for "PTSD" returned 211 results at the Naval Discharge Review Board, 2,901 at the Board for Correction of Naval Records and 11,600 across all of the boards together, about a quarter of the files the six Army, Navy and Marine Corps, and Air Force boards alone posted with the term.

68. The search fails even in the easiest case. The misfiled decision described above, posted as 4566-20, is a plain text file, the simplest format there is for a search engine to read. On October 1, 2026, a search of the Board for Correction of Naval Records for the exact words "passive aggressive personality features but determined to be fit for duty," taken from that decision, returned "Sorry, no results found."

**The Institute built the searchable collection the Secretaries have not**

69. Using only the decisions the Defendants have posted, the Institute built and publishes the Reading Room, a free public website. To build it, the Institute downloaded the decision files from each board's public lists, the same files any visitor to the website can download one at a time, with no password or permission required. It then converted each file to text, read scanned pages with optical character recognition, and recorded each decision's board and docket number. The September 27, 2026 data-pack build of the Institute's Reading Room contains 292,835 records from the eight discharge review boards and boards for the correction of

military records, plus 12,556 records of the Physical Disability Board of Review. The figures in this Complaint measure different things. The 310,394 figure counts every file in a decision format that the lists of all the boards linked on October 1, 2026. The Government Accountability Office's figure of more than 267,000 is its 2025 count of the decisions on the website. The more than 213,000 decisions referred to in Count V are those on the lists of the Army, Navy and Marine Corps, and Air Force correction boards alone. The records in the Institute's Reading Room are the decisions the Institute extracted from the posted files.

70. Every decision of the eight boards published by the Institute in its own Reading Room can be searched by its full text and browsed by board, and each is recorded with its board and docket number and linked to the board's own copy on the website. For nearly every decision the Institute has also recorded the outcome, using the information in the posted decision. Where a posted decision does not make the outcome clear, the Institute's Reading Room says so rather than guess.

71. The Institute's Reading Room shows that what the law requires is practicable. The Institute built it because the Department's website could not support its research or its pro bono representation of veterans before the boards, and made it free and open to the public so that veterans and their advocates can research their cases, and so that Congress, the courts and the public can see, across all eight boards at once, how the boards apply the law. It cannot serve as an official record of the Department, and it is no substitute for the Secretaries' performance of their duties. It contains only the decisions the Defendants have posted, so a decision they have not posted is not in it. It inherits the errors in what they posted, including decisions filed under the wrong docket number or in the wrong year's folder, files that will not open, and decisions posted only as images, whose text the Institute could recover only by machine reading. Nothing

the Institute records about a decision is the official summary that 10 U.S.C. § 1552(a)(5) requires the Secretaries to publish. Nor does it contain the decisions that Congress has directed be kept confidential, those rendered in the review process 10 U.S.C. § 1554b(a) prescribes for former members who were victims of a sex-related offense during service, which "shall not be made available to the public, except with the consent of the individual concerned." 10 U.S.C. § 1554b(a), (c). The Institute does not challenge that protection.

**The Government Accountability Office's findings and the Department's concurrence**

72. Liberal consideration is a legal standard Congress imposed by statute for certain applications based in whole or in part on post-traumatic stress disorder or traumatic brain injury, on the discharge review boards in 2016 and on the correction boards in 2017. 10 U.S.C. § 1553(d)(3), added by Pub. L. 114-328, § 535, 130 Stat. 2000, 2123 (2016); 10 U.S.C. § 1552(h), added by Pub. L. 115-91, § 520(a)(2), 131 Stat. 1283, 1379 (2017). In July 2025 the Government Accountability Office compared the boards' own case databases with the decisions posted on the public website. It found that about 43 percent of the more than 19,000 liberal-consideration cases the boards closed from January 2018 through March 2024 were missing from the public site. GAO-25-107354, at 53. Its count excludes every liberal-consideration case involving sexual harassment or sexual assault, a group that includes the decisions 10 U.S.C. § 1554b keeps confidential. GAO-25-107354, at 53 n.71, 54 tbl. 7 n.a. The Institute does not seek any decision that § 1554b protects.

73. By board, the missing decisions were 3,200 of 3,799 (84 percent) for the Army Board for Correction of Military Records, 935 of 4,196 (22 percent) for the Board for Correction of Naval Records, 260 of 323 (81 percent) for the Air Force Board for Correction of Military Records, 1,080 of 5,189 (21 percent) for the Army Discharge Review Board, 2,325 of 4,813 (48

percent) for the Naval Discharge Review Board, and 535 of 1,030 (52 percent) for the Air Force Discharge Review Board. GAO-25-107354, tbl. 7, at 54. Army officials, on review, "concurred that documents were missing." GAO-25-107354, at 54. Air Force officials reported that a 2024 audit "determined some decisional documents were missing," and officials of the Under Secretary of Defense for Personnel and Readiness "recognize their method for identifying missing decisional documents is not effective." GAO-25-107354, at 55.

74. GAO also found that "[d]ecisional documents are not effectively organized," measuring them against the Department's own standard that they be retrievable "in a usable and concise form so that the public and those who represent applicants before the boards can isolate cases that may be similar to an applicant's case." GAO-25-107354, at 56. That capability, GAO explained, "would help promote a greater awareness of the types of evidence each board is looking for and enable the applicant to build the most compelling case for their requested upgrade." GAO-25-107354, at 57. Instead, the more than 267,000 decisions on the website "can only be sorted according to the board adjudicating the case and the calendar year in which it was adjudicated," and to find cases of a particular kind "an applicant would need a specific docket number or to conduct a review of numerous decisional documents." GAO-25-107354, at 57. As alleged above, the website's search can fail to find a decision even by its docket number. That is why the summaries and indexes the law requires matter.

75. GAO addressed its recommendations on the website to the Secretary of the Air Force. The Air Force hosts and operates the website, and the military departments agreed in July 2024 that the Air Force Review Boards Agency would be the lead agent for a new one. GAO-25-107354, at 56 & n.74. It recommended that the Secretary ensure a process "that ensures all decisional documents are posted in the reading room" (Recommendation 8), and a process

that ensures the decisions "are organized so that users of the information can identify specific types of cases and that enhances the reading room's keyword search function" (Recommendation 9). GAO-25-107354, at 61. The Department of Defense "concurred with recommendations 2, 8, and 9." GAO-25-107354, at 61. In January 2026, GAO reported, the Department's own officials stated that section 523 "requires that each final decision of a Board for Correction of Military or Naval Records be made available to the public on a centralized website, including a summary of each decision, indexed by subject matter," and that the Air Force Review Boards Agency "is the lead proponent for implementing this DOD-wide requirement." GAO-25-107354, Recommendations 8–9 (status update, July 2026). In July 2026, three months before the requirement took effect, GAO reported that the same officials told it that the Air Force had hired "two full-time employees for the electronic reading room," an administrator and an archivist, had procured a service in October 2025, and planned to "develop metadata and create case summary criteria," completing the effort "by October 2026." GAO-25-107354, Recommendations 8–9 (status update, July 2026). The Department agreed in July 2024 to replace the website, could give no launch date in April 2025, told the Government Accountability Office in July 2026 that it would finish by October 2026, and had not finished on November 2, 2026. A plan to comply on a date the Department chooses is not compliance on the date Congress chose.

76. Responsibility for the website is divided and unclear. Department of Defense guidance makes the Secretary of the Army responsible for "overall guidance and supervision" of it. GAO-25-107354, at 55 & n.73. The website's front page states that "[t]he Department of the Army is the executive agent for this DOD Boards Reading Room." Yet Air Force officials told GAO that around 2004 the Army "informally transferred responsibility" for it to the Air Force Judge Advocate General's Corps, which has hosted and operated it since. GAO-25-107354, at

55–56. The website's own privacy notice says it is provided by the Air Force Legal Operations Agency "under the executive oversight of the Army Review Boards Agency." Posting the decisions is "a military department responsibility," left to each department for its own boards. GAO-25-107354, at 55. In July 2024 the military departments agreed that the Air Force Review Boards Agency would lead the building of a new website, and that agency "will not assume responsibility" for the current one. GAO-25-107354, at 56 & n.75. The department responsible for the website does not operate it, the office that operates it is not building its replacement, and the agency building the replacement will not take responsibility for it. Of the 2024 amendment requiring a summary of each decision indexed by subject matter, GAO observed, "It is unclear exactly how this requirement will be implemented." GAO-25-107354, at 57 n.78.

77. In February 2019, the Office of Legal Policy in the Office of the Under Secretary of Defense for Personnel and Readiness trained the members of the Board for Correction of Naval Records that veterans "take injustice to Congress/media" and that Congress might conclude "the process broken somewhere." Among the possible reasons it listed was "Reading room not helpful?" In the materials the Board released to the Institute on November 5, 2026, as its current training for Board members, the same Office told the Board, "OLP is working with Military Department POCs to implement the new statutory requirements by October 2026."

78. The Institute asked the Board for Correction of Naval Records for its records concerning the implementation of the summary and subject-matter index requirement, and for the number of final decisions it issued and published each year since 2016. On November 5, 2026, the Board answered, "[BCNR] is not the Executive Agent for this DOW-wide requirement. The DOW interprets and implements this requirement as a centralized website for the publication of decisions from all of the Boards." It produced no records. It reported that it "issued 52,313

final decisions from 2016 through 30 September 2026," and for the number it published, it referred the Institute to the reading room.

**The website on and after October 1, 2026**

79. On October 1, 2026, the day the summaries and the subject index became due, the website had not changed. Neither the front page nor any board's page contained a summary of any decision, no page of the Army, Navy or Air Force boards contained an index of any kind or arranged decisions by subject, and no page announced a new website. Even the Board for Correction of Military Records of the Coast Guard, which sorts the 2,853 files on its lists into 25 subject folders on the same website, offers no summary of any decision and no index of summaries. A folder is not a summary, and a list of folders is not an index.

80. The website has not changed since. Its front page on November 2, 2026, was identical, byte for byte, to its front page on October 1, 2026, which was identical to its front page on September 26, 2026, and to the copy the Internet Archive preserved on April 20, 2024. The pages of the Army, Navy and Marine Corps, and Air Force boards were likewise identical, byte for byte, on November 2 to what they were on October 1. The newest file on the Board for Correction of Naval Records' lists is dated June 29, 2026, and the Board has posted nothing since.

81. On October 9, 2026, the Institute wrote by certified mail, return receipt requested, to the President and to each of the Secretaries of the Army, the Navy, the Air Force and Homeland Security. Each letter to a Secretary asked that the Secretary publish every final decision of the department's review boards, including those not posted, together with the summaries and the subject index that 10 U.S.C. § 1552(a)(5) requires, and state in writing by

October 30, 2026, what action would be taken and when. The letter to the President informed him that the boards had produced no summaries and no subject index, asked him to direct the Secretaries to comply without further delay, and asked that his office state by October 30, 2026, what action would be taken. The Postal Service delivered the letters to the Secretaries of the Navy and the Air Force on October 20, 2026, the letter to the Secretary of the Army on October 26, 2026, and the letter to the Secretary of Homeland Security on November 2, 2026. The Postal Service scheduled the letter to the President for redelivery on October 30, 2026, and delivered it on November 4, 2026. No Secretary has responded, and the President's office has not responded.

**The names of the officials who decide veterans' rights at the Board for Correction of Naval Records**

82. Following a hearing, or where the Board recommends correcting the record without one, the Board's regulation requires that "[t]he name and final vote of each Board member will be recorded." 32 C.F.R. § 723.6(a)(3); see id. § 723.6(c). It requires that "the record of the votes of Board members" be made available for public inspection. 32 C.F.R. § 723.11(b)(1). The same section provides that, "[t]o the extent necessary to prevent a clearly unwarranted invasion of personal privacy, identifying details of the applicant and other persons will be deleted," and that "[n]ames, addresses, social security numbers and military service numbers must be deleted." 32 C.F.R. § 723.11(b)(3). Read with the vote-disclosure provision of the same section and with 5 U.S.C. § 552(a)(2), that deletion protects applicants and private persons named in the record. It does not reach the Board members whose votes the regulation itself makes public. Any other deletion is limited to information "which is privileged or classified," and may be made "only if a written statement of the basis for such deletion is made available for public inspection." 32 C.F.R. § 723.11(b)(3). The Board's members are civilian

officials of the Department of the Navy, through whom Congress requires the Secretary to act, and each decision is an official act of the Department. 10 U.S.C. § 1552(a)(1). A voting member's name, as the official who decided a case, is not the private information of an applicant or other person that the regulation protects.

83. From at least 1998, the earliest year of decisions the Navy has posted, until mid-2015, decisions the Navy published commonly bore the printed name of the Board's signing official, its Executive Director. Since then the Navy has blacked out that name in the decisions it publishes, leaving at most the title. The practice began before Congress enacted § 1552(a)(5) on December 23, 2016. From then until October 1, 2026, that section provided that "[i]n any decision so made available to the public there shall be redacted all personally identifiable information," and since October 1, 2026, it provides that the Secretary "shall protect the privacy of claimants by redacting all personally identifiable information." Neither version refers to the officials who decide or sign a decision in an official capacity.

84. The Navy hides not only who decided each case but how each member voted. A search of the Institute's Reading Room shows that in 31,398 of the decisions the Navy has published, the Board tells the applicant that "the names and votes of the members of the panel will be furnished upon request." The published decisions do not tell the public who decided the case or how each member voted. The Board's own rule requires that, when members disagree, "a minority report will be submitted." 32 C.F.R. § 723.6(b). Yet a published decision ordinarily does not say whether the panel was unanimous or divided. Searching the full text of every one of the Board's more than 65,000 published decisions in the Institute's Reading Room, the Institute found that a split vote comes to light only when a decision happens to mention one, as a handful do. One decision in the Board's 2024 folder recounts that a split vote sent the case to the

Assistant General Counsel of the Navy, who "concurred with the Board's Minority opinion" and denied relief. Board for Correction of Naval Records, Docket No. NR20240009900. A divided vote can show a later applicant, and a reviewing court, that the record supported relief. A unanimous vote shows that the full panel joined the reasoning. In the federal courts, the public knows how each judge voted and can read every recorded dissent. At the Board for Correction of Naval Records, the public knows neither.

85. The Board's own decisions show what the public is denied. In 2020 the Board granted Mr. Roselli partial relief. The copy the Board mailed to him states that "[t]he Board, consisting of Mr. Cash, Mr. Goode, and Mr. Newman, reviewed Petitioner's allegations," and it bears the name of the Executive Director who signed it. The copy the Navy published states that "[t]he Board, consisting of , reviewed Petitioner's allegations." Every name was deleted, leaving the comma behind. By 2022 even the applicant was not told. The Board's decision on Mr. Roselli's next application named no member and told him only that the names and votes "will be furnished upon request."

86. The Freedom of Information Act permits an agency to delete identifying details from a published opinion only "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy," and requires that "the justification for the deletion shall be explained fully in writing." 5 U.S.C. § 552(a)(2). The Institute has searched the Navy's published decisions and the Board's website and found no written justification for deleting the names of the Board's members and signing officials. The Institute asked the Department of the Navy for any such justification in Request 15. On November 5, 2026, the Board answered, "There are no records responsive to this part of your request." In the same letter, the Board stated that "Board member names are withheld Pursuant to exemption 5 U.S.C. § 552 (b) (6), and in accordance with the

DOD instruction." It did not identify the instruction, said nothing about the name of the signing official or the members' votes, and explained nothing further. That sentence, sent to one requester, is not a justification "explained fully in writing," and the Navy has made no such explanation available to the public. In a second letter the same day, answering Request 35, the Board withheld the members' names under 5 U.S.C. § 552(b)(6) and "the Secretary of Defense Memorandum dated 2 September 2005," and stated that "[t]he votes are already made available to the public via the redacted decision documents available on the reading room." They are not. As alleged above, 31,398 of the Board's published decisions tell the applicant that "the names and votes of the members of the panel will be furnished upon request," and a published decision ordinarily does not say how any member voted. No memorandum can relieve the Department of the requirements of 5 U.S.C. § 552(a)(2).

**The harm to America's veterans**

87. The boards exist for veterans. Many veterans file their petitions and make their plea for justice or mercy without a lawyer, and each must show why the record of their own service is wrong or unjust. To make that showing, a veteran is greatly advantaged by knowing how the board has decided previous cases with similar facts and circumstances. The Secretaries' regulations, cited above, require indexes that let the public find those cases, and Congress now requires a summary of each decision, indexed by subject matter.

88. A veteran's characterization of service can decide eligibility for veterans' benefits. An honorable discharge or a general discharge under honorable conditions "is binding on the Department of Veterans Affairs as to character of discharge." 38 C.F.R. § 3.12(a). For a veteran with an Other Than Honorable discharge, however, the Department of Veterans Affairs decides for itself whether the veteran's service was dishonorable, and it denies benefits if any bar in its

regulation applies. 38 C.F.R. § 3.12(c)–(d). The Department of Veterans Affairs cannot change the discharge. Only the military department, acting through its review boards, can. An upgrade by a correction board "sets aside any prior bar to benefits," 38 C.F.R. § 3.12(f), and an upgrade by a discharge review board sets aside the regulatory bars, id. § 3.12(h). The Government Accountability Office has found that "[w]ithout an honorable discharge, a former service member's access to valuable medical and educational benefits is limited and can make it difficult to find employment." GAO-25-107354, at 58. The search failures documented above keep veterans, and those who help them, from learning how other veterans obtained the upgrades that made them eligible for health care and other benefits.

89. The Government Accountability Office found that the website's organization means "potential applicants may face difficulty identifying relevant decisional documents to assist them in building their own cases, a stated purpose of the reading room." GAO-25-107354, at 57.

90. The failure falls hardest on veterans whom the Defendants have already agreed, in court, to treat fairly. The Institute's Reading Room shows that the Naval Discharge Review Board has issued 1,063 decisions that cite the class settlement in *Manker v. Del Toro*, yet searches of the website on September 26 and again on October 1, 2026, found none of them. The Army Board for Correction of Military Records has issued at least eight decisions mentioning the settlement in *Kennedy v. McCarthy*, of which the website's search found none on September 26, 2026, and five on October 1. The Physical Disability Board of Review has issued at least twelve decisions naming the class action in *Sabo v. United States*, and the website's search found none on either date. A settlement does a veteran little good when the decisions applying it cannot be found.

91. Congress created the correction boards to correct records, authorizing the Secretary to act "to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Many corrections are routine, such as correcting a DD-214 by adding a missing deployment, a campaign medal or a course of military training that the record leaves out. Justice requires that like cases be decided alike, and every veteran who petitions a board is entitled to it. Military records lend themselves to principles of stare decisis because every service member's record is kept on the same forms, in the same codes, for the same ranks and specialties, and every offense is defined by the same punitive articles of the Uniform Code of Military Justice. A court can review an arbitrary denial in a single case. But when a board denies one veteran a routine correction it has granted many others, the denial is arbitrary, and only the board's own decisions can show it. Without those decisions, and without the summaries and index the law requires, a board can decide like cases differently, and the veteran it denied will never know. The veteran cannot prove it, no court can review it, and Congress cannot oversee it. It is a system that escapes scrutiny at every level.

**The harm to the Institute**

92. The Institute represents service members and veterans before the boards, without charge. Within its first month, eight clients, veterans and their families, signed engagement letters making the Institute their counsel, and preparing their petitions to the boards is part of the Institute's daily work. The boards are federal adjudicators. They decide, under federal statutes, regulations and the Department of Defense's binding guidance, whether a service characterization will be upgraded and whether a veteran's record will otherwise be corrected.

93. In any field of law, counsel cannot adequately prepare a case without the prior decisions of the tribunal that will decide it. Counsel must find the board's decisions on the issue

the veteran raises, learn the standards the board actually applies, and show the board how it has decided cases like the veteran's. Attorneys who represent veterans before the discharge review boards and the correction boards cannot do that work reliably. Many of the boards' decisions are never posted, and those that are posted cannot be searched by subject. In practice, the law the boards make has become secret law. The Institute's clients raise issues that include the Vietnam-era Presidential Clemency Program of 1974 and missing Iraq and Afghanistan post-deployment health assessments required by 10 U.S.C. § 1074f. Because the boards publish no summaries and no subject index, and the website's own search fails to find decisions that exist, the Institute's counsel cannot reliably find the boards' decisions on those issues, or on any other, on the Department's website. And no one can find the decisions the departments never posted to the website.

94. In October 2026 the Institute was preparing a petition to the Board for Correction of Naval Records for Mr. Roselli, a 78-year-old Marine who received an Undesirable discharge in 1970 and a pardon from President Ford in 1975. To prepare it, counsel needed the Board's decisions involving the Presidential Clemency Program. On October 16, 2026, the website's search of the Board's decisions returned 8 decisions for the phrase "Presidential Clemency." A search of the Institute's Reading Room, which holds the same posted decisions, found 31. The website's search missed 24 of them, including the Board's 2020 decision in Mr. Roselli's own case. The Institute filed Mr. Roselli's petition on November 3, 2026, and it remains pending.

95. For another client, a Marine veteran of the Iraq War, the Institute needed the Board's decisions discussing post-deployment health assessments. The same search returned 19. The Institute's Reading Room found 33.

96. The absence of summaries and a subject index injures the Institute even when a decision can be found. No posted decision carries a summary, and no index by subject exists. For Mr. Roselli's petition, counsel could learn whether a decision involved the Presidential Clemency Program, and what it decided, only by opening and reading each one, the 8 the website's search returned and the 31 the Institute's Reading Room found. The same was true of the decisions on post-deployment health assessments. A summary of each decision, indexed by subject matter, would have put every decision on the Presidential Clemency Program in front of counsel at once, in the official record. Counsel could see which arguments succeeded and which failed, what evidence the Board found persuasive, and whether like cases were decided alike. Congress could see the same thing, and so could every veteran preparing a petition alone.

97. Access to the decisions is also how the Institute learns whether the boards are following the law. When a board disregards a statute, a regulation or the Department's binding guidance, the remedy lies in federal court, and bringing that case is part of representing a veteran. The Institute cannot identify a board's departures from the law, or show that a board has been inconsistent, in decisions it cannot find, whether because the website's search fails or because the Secretaries never published them.

98. The Institute studies how each board decides the questions that recur before it. Those include how often a board grants the personal hearing an applicant requests, how a board applies the Department of Defense's guidance on liberal consideration of mental-health conditions, beginning with the Hagel memorandum of 2014 and the Kurta memorandum of 2017, and how a board treats applications arising from courts-martial. That research requires finding every decision a board has issued on a given issue in a given period.

99. That research is necessarily incomplete. The Institute's Reading Room holds only the decisions the Secretaries have posted, and a decision they have not posted is in neither place. The Government Accountability Office found most of the Army and Air Force correction boards' liberal-consideration decisions missing from the website, as alleged above, and no search of the published record can show which decisions are missing or what they decided. Without every final decision, a summary of each and a subject index, the Institute cannot complete its studies of the correction board of any Secretary named in Counts V and VII.

100. The Institute will continue this research and its pro bono representation of veterans, and it will use the summaries and subject index when they are published. An order requiring the Secretaries to publish every final decision of the covered boards, including those never posted, each with a summary indexed by subject matter, to publish the discharge review boards' quarterly indexes, and to restore the names and votes the Navy deletes, would let the Institute find the decisions on the issue each client raises, identify the decisions on each issue it studies from the official record, check its Reading Room against that record, and learn which decisions the boards have not published.

101. The Institute does not rest its standing on money it chose to spend. Building its own Reading Room is a consequence of the injury, not the injury itself.

102. Federal law requires that each final decision of the correction boards be made available to the public and, since October 1, 2026, that the published information include a summary of each decision indexed by subject matter. The Freedom of Information Act separately requires that the boards' final opinions be made available for public inspection. Without the missing decisions, summaries and index, and without the lists of unpublished decisions it asked

for in Requests 9 through 14 and has not received, the Institute cannot find the decisions on the issues its clients raise, cannot show a board how it has decided like cases, cannot complete its studies, and cannot learn which decisions the boards have not published. A decision that the website's search cannot find, that carries no summary and that appears in no index is not public in any practical sense.

103. Congress gave the Secretaries more than twenty-one months' notice of a specific duty. The Government Accountability Office told the Department in July 2025 that thousands of decisions were missing and that the rest could be sorted only by board and year, and the Department agreed to fix both. The Institute, working alone and without any outside funding, extracted and organized the text of the same decisions in September 2026, beginning before it was incorporated. The Secretaries, with the resources of the Department of Defense, have not done what the law requires.

104. Other executive agencies that decide cases make their decisions usable without any statute ordering them to. The Board of Immigration Appeals selects decisions to publish as precedents that guide later cases. 8 C.F.R. § 1003.1(g)(2). The National Labor Relations Board publishes a weekly summary of its administrative law decisions, with a short description of the issues and facts of each case, and classifies most of its published decisions by subject. The Board of Veterans' Appeals has made every decision since January 1, 1992 available on its website, searchable by word and topic. 38 C.F.R. § 20.1301(c)(1). No other provision of the United States Code known to the Institute orders an executive agency to publish a summary of each decision indexed by subject matter. What other agencies do on their own, the military's correction boards have not done even under an order from Congress.

105. Congress has enacted a national defense authorization act for 65 consecutive fiscal years, most recently the National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60 (Dec. 18, 2025). The Department of Defense and the military departments have been authorized and funded every year while their boards failed to publish what the law requires. Congress's control of the purse has not secured compliance, and it leaves the veterans who depend on these boards with nowhere else to turn. Only this Court can compel the action the law requires. 5 U.S.C. §§ 704, 706(1).

## CLAIMS FOR RELIEF

**COUNT I — Failure to make timely determinations, Freedom of Information Act, 5 U.S.C. § 552(a)(6)(A)(i) (against the Department of Defense, the Department of the Army and the Department of Homeland Security)**

106. The Institute incorporates by reference all prior paragraphs.

107. Counts I through IV arise under the Freedom of Information Act and are brought against Defendant agencies only. Count VIII arises under the same Act, pleads the Administrative Procedure Act only in the alternative, and is brought against the Department of the Navy and the Secretary of the Navy. The Institute does not allege that the President violated the Freedom of Information Act, and it names him in none of these Counts. The President is named in Count IX only, which seeks a declaration of his duty under Article II of the Constitution to take care that 10 U.S.C. § 1552(a)(5) is faithfully executed.

108. For each request included in this Count, the paragraphs that follow identify the receiving agency, the request number, the date of receipt or sending, the determination deadline and the response history. Each included request reasonably describes the records sought and

complies with the receiving agency's published procedures. Request 4, on which the Department of the Navy made a timely determination, is addressed in Counts II and III.

109. For Request 1 to Defendant Department of Defense (No. 26-F-3360), received September 24, 2026, the determination period expired on October 23, 2026. The Office of the Secretary of Defense asserted unusual circumstances by letter dated September 29, 2026, but gave no date on which a determination was expected, as 5 U.S.C. § 552(a)(6)(B)(i) requires. Even if ten more working days applied, they expired on November 6, 2026.

110. For Request 2 to Defendant Department of the Army, received September 23, 2026, the determination period expired on October 22, 2026. The Department of the Army has claimed no extension.

111. For Request 6 to Defendant Department of Homeland Security (No. 2026-CGFO-04536), received September 23, 2026, the determination period expired on October 22, 2026. The Department has claimed no extension.

112. For Request 7 to Defendant Department of Homeland Security (No. 2026-HQFO-03985), received September 23, 2026, the determination period expired on October 22, 2026. The Department claimed a ten-working-day extension by letter dated September 28, 2026, but gave no date on which a determination was expected, as 5 U.S.C. § 552(a)(6)(B)(i) requires. Even if the extension applied, it expired on November 5, 2026.

113. For Request 9 to Defendant Department of the Army, received September 23, 2026, the determination period expired on October 22, 2026. The Department of the Army has claimed no extension.

114. For Request 13 to Defendant Department of Homeland Security (No. 2026-CGFO-04545), received September 23, 2026, the determination period expired on October 22, 2026. The Department did not respond until October 28, 2026, six days after the period expired, when it stated that it would need more than the ten additional working days the Act allows and gave no date on which a determination was expected, as 5 U.S.C. § 552(a)(6)(B)(i) requires.

115. For Request 14 to Defendant Department of Homeland Security (No. 2026-HQFO-03988), received September 23, 2026, the determination period expired on October 22, 2026. The Department acknowledged the request by letter dated September 28, 2026, and claimed no extension.

116. For Request 18 to Defendant Department of the Army, received September 30, 2026, the determination period expired on October 29, 2026. The Department of the Army has claimed no extension.

117. Requests 3, 8, 10 and 15 to Defendant Department of the Navy are not included in this Count or in Counts II and III. The Board for Correction of Naval Records placed them on hold on October 19, 2026, pending payment of fees the Institute disputes. The Institute's administrative appeal of the fee category, the denial of a fee waiver, the fee assessment and the combination of the four requests is pending before the Office of the Judge Advocate General of the Navy. On November 5, 2026, without mentioning the fees, the Board issued a final response to each of the four requests, and the Institute appealed the response to Request 8 the same day. The Institute will seek leave to supplement this Complaint as to those requests upon the decision of its administrative appeals or the expiration of the time to decide them. 5 U.S.C. §

552(a)(6)(A)(ii), (a)(6)(C)(i); Fed. R. Civ. P. 15(d). Request 17 to Defendant Department of Defense is likewise not included in this Count or in Counts II and III. The Office of the Secretary of Defense asserted unusual circumstances on October 8, 2026, without stating the date on which a determination was expected, and if that notice were valid the extended period would end on November 13, 2026. The Institute will seek leave to supplement this Complaint as to Request 17 after that date. Fed. R. Civ. P. 15(d). Requests 5, 12 and 19 to Defendant Department of the Air Force are likewise not included in this Count or in Counts II and III. The Institute sent them by email to the Department's FOIA mailbox on September 23 and 30, 2026, by certified mail to the Department's FOIA office on October 17, 2026, and by email on October 18, 2026, to the Headquarters Air Force FOIA office, which receives the Department's requests. Measured from October 19, 2026, the period for determining them will expire no later than November 17, 2026. The Institute will seek leave to supplement this Complaint as to Requests 5, 12 and 19 after that date. Fed. R. Civ. P. 15(d). Request 11 to Defendant Department of the Navy is likewise not included in this Count or in Counts II and III. The Institute sent it by email to the Department's central FOIA office on September 23, 2026, the same day it sent Requests 4 and 15 to that office from the same address, and that office received and numbered Requests 4 and 15. The Institute followed up by email on October 16, 2026, and sent Request 11 again by certified mail, which the Department received on October 26, 2026. The Department has not acknowledged it. The Institute contends that the determination period expired on October 22, 2026, and omits Request 11 from this Count only out of caution. Measured from October 26, 2026, the period will expire no later than November 24, 2026. The Institute will seek leave to supplement this Complaint as to Request 11 after that date. Fed. R. Civ. P. 15(d).

118. As of filing, no Defendant agency had communicated a determination satisfying FOIA on any of the requests included in this Count. The Institute has therefore exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**COUNT II — Failure to conduct an adequate search, Freedom of Information Act, 5 U.S.C. § 552(a)(3)(C)–(D) (against the Department of Defense, the Department of the Army, the Department of the Navy and the Department of Homeland Security)**

119. The Institute incorporates by reference all prior paragraphs.

120. Counts II and III include each request included in Count I, and items 1, 3 and 4 of Request 4. Each included request seeks agency records and was properly made. Each Defendant agency was required to search for records responsive to the request, and to make reasonable efforts to search for them in electronic form or format. 5 U.S.C. § 552(a)(3)(A), (C)–(D).

121. Request 4 to Defendant Department of the Navy (No. 2026-NavyFOIA-012446) is included in this Count and in Count III. The Department made a determination on October 1, 2026, that described no search and produced nothing. The Institute appealed the response to items 1, 3 and 4 on October 7, 2026, and the period for a determination on the appeal expired on November 5, 2026, without one. 5 U.S.C. § 552(a)(6)(A)(ii). The Institute has exhausted its administrative remedies as to those items of Request 4. 5 U.S.C. § 552(a)(6)(C)(i).

122. No Defendant agency has shown that it conducted a search reasonably calculated to locate all responsive records, and none has produced any record responsive to the requests included in this Count. On information and belief, each Defendant agency has failed to conduct an adequate search for records responsive to the Institute's requests.

**COUNT III — Failure to produce records, Freedom of Information Act, 5 U.S.C. § 552(a)(3)(A), (a)(4)(B) (against the Department of Defense, the Department of the Army, the Department of the Navy and the Department of Homeland Security)**

123. The Institute incorporates by reference all prior paragraphs.

124. Each included request seeks records that are agency records of the receiving Defendant, and one or more of those records, or portions of them, are not exempt from disclosure.

125. Each Defendant agency has failed to make the records promptly available and continues to withhold them. The Institute seeks disclosure of the nonexempt records and reasonably segregable nonexempt portions under 5 U.S.C. § 552(a)(4)(B).

**COUNT IV — Failure to make the boards' final decisions, and current indexes of them, available for public inspection, Freedom of Information Act, 5 U.S.C. § 552(a)(2) (against the Department of the Army, the Department of the Navy, the Department of the Air Force and the Department of Homeland Security)**

126. The Institute incorporates by reference all prior paragraphs.

127. The Act requires each agency to make available for public inspection in electronic format its final opinions and orders made in the adjudication of cases. A final decision of a board for the correction of military records or a discharge review board is a final opinion or order made in the adjudication of a case.

128. The Department of the Army, the Department of the Navy and the Department of the Air Force each hold final decisions of their correction boards that are not available for public

inspection in electronic format. Those decisions include the liberal-consideration decisions of each department's correction board closed from January 2018 through March 2024 that the Government Accountability Office found missing from the website and that, on information and belief, remain unposted, namely 3,200 decisions of the Army Board for Correction of Military Records, 935 of the Board for Correction of Naval Records and 260 of the Air Force Board for Correction of Military Records. The same departments hold the liberal-consideration decisions of their discharge review boards that the Government Accountability Office found missing and that, on information and belief, remain unposted, namely 1,080 decisions of the Army Discharge Review Board, 2,325 of the Naval Discharge Review Board and 535 of the Air Force Discharge Review Board. The Board for Correction of Naval Records reported on November 5, 2026, that it issued 52,313 final decisions from 2016 through September 30, 2026. On October 1, 2026, its lists on the website for 2016 through 2026 linked 35,205 files. In Requests 9, 10 and 12, the Institute asked the Department of the Army, the Department of the Navy and the Department of the Air Force for a list, by docket number and date, of every final decision of their boards issued since January 1, 2017, that has not been made available to the public on the website. None has provided one. The Board for Correction of Naval Records answered Request 10 that "[n]o such record exists." On October 9, 2026, in the letters to the Secretaries alleged above, the Institute asked that every final decision of the boards be made available to the public as 5 U.S.C. § 552(a)(2)(A) requires, including every decision not then posted. The Secretaries of the Navy and the Air Force received those letters on October 20, 2026, and the Secretary of the Army on October 26, 2026. None responded. On November 2, 2026, the Institute demanded again in writing, by email and by certified mail, that the Department of the Army, the Department of the Navy and the Department of the Air Force each make available for public inspection in

electronic format, as 5 U.S.C. § 552(a)(2)(A) requires, every final decision of its correction board that it has not made available on the website, including the liberal-consideration decisions the Government Accountability Office found missing, and asked each to state in writing, by email, whether and when it would do so. None has made those decisions available.

129. On information and belief, the Department of Homeland Security likewise holds final decisions of the Coast Guard Discharge Review Board and the Board for Correction of Military Records of the Coast Guard that are not available for public inspection in electronic format. The Government Accountability Office did not examine the Coast Guard's boards. In Requests 13 and 14, the Institute asked the Department for a list, by docket number and date, of every final decision of the two boards issued since January 1, 2017, that has not been made available to the public. The Department has provided none. The Institute's letter of October 9, 2026, alleged above, asked the Secretary of Homeland Security to publish every final decision of the Department's review boards, including those not posted, and the Postal Service delivered it on November 2, 2026. No response has been received.

130. On November 3, 2026, the Institute asked each of the four departments under 5 U.S.C. § 552(a)(3) for copies of the final decisions of its boards that have not been made available on the website, in Requests 34 to 39 (the Institute numbers all of its records requests in one series, and Requests 20 to 33 are not at issue in this action), and asked the Department of the Navy for the names and votes of the Board members in four identified decisions of the Board for Correction of Naval Records. On November 5, 2026, the Board for Correction of Naval Records answered Request 35. It denied the request for copies of the decisions as overly broad and unduly burdensome, and it withheld the names of the Board members under 5 U.S.C. § 552(b)(6). The time to respond to the other requests has not run. The Institute will seek leave

under Rule 15(d) to supplement this Complaint as to these requests when the time to respond, or to decide any administrative appeal, has run.

131. A claim under § 552(a)(2) requires no request for specific records under § 552(a)(3). It requires that the plaintiff identify ascertainable records or categories of records, and the Institute has also demanded their publication, as alleged above. The Institute identifies the categories above, namely each board's liberal-consideration decisions closed from January 2018 through March 2024 that the Government Accountability Office found missing, and each Coast Guard board's final decisions issued since January 1, 2017, that have not been made available on the website. The Institute's searches of the website, described above, did not find decisions that exist, including decisions searched for by their own docket numbers.

132. Production of the decisions to the Institute alone would not make them available for public inspection. The Institute's need for public availability continues, because its research and its representation of veterans are ongoing, and it publishes its findings for advocates, courts, Congress and the public, who cannot use decisions they cannot find. Section 552(a)(4)(B) authorizes the Court to order the Defendants to make these decisions available for public inspection in electronic format.

133. The Act also requires each agency to "maintain and make available for public inspection in an electronic format current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published," and to publish each index "quarterly or more frequently." 5 U.S.C. § 552(a)(2). The lists of files on the website identify only the decisions that have been posted. They do not identify the decisions the Government Accountability Office

found missing, or any other final decision that has not been posted, and the Institute's requests for a list of those decisions have produced no list. None of the four departments has made available a current index identifying all of its boards' final decisions, as the Act requires.

134. The Institute seeks relief under 5 U.S.C. § 552(a)(4)(B), with declaratory relief. This Count concerns the boards' final decisions and the current indexes of them that 5 U.S.C. § 552(a)(2) requires. It does not seek the summaries and subject index required by 10 U.S.C. § 1552(a)(5), which Counts V and VII address.

**COUNT V — Agency action unlawfully withheld or unreasonably delayed, a summary of each final decision and a subject-matter index of the summaries, 5 U.S.C. § 706(1); 10 U.S.C. § 1552(a)(5); 32 C.F.R. §§ 723.11(b)(2), 581.3(i)(2)(i) (against the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force and the Secretary of Homeland Security)**

135. The Institute incorporates by reference all prior paragraphs.

136. Section 1552(a)(5), as applicable when this action is filed, requires the public electronic availability of each covered final correction-board decision, a summary of each covered decision, and indexing of those summaries by subject matter. This Count enforces the last two duties, a summary of each decision published on the website and a subject-matter index of the summaries. Publication of the decisions themselves is sought under the Freedom of Information Act in Count IV. The responsible Secretaries must protect claimants' personally identifiable information as the statute requires. 10 U.S.C. § 1552(a)(5), as amended by Pub. L. 118-159, § 523.

137. This Count challenges the specific omissions identified in the four paragraphs that follow. For each omission, those allegations identify the responsible board and Secretary, the decision or ascertainable category and period, the particular summary or subject-index obligation, and the dated observations establishing that the required act remains unperformed.

138. On October 1, 2026, the day the amended duty took effect, the website's page for the Army Board for Correction of Military Records listed that board's decisions only as files in folders by calendar year, from 1997 through 2025. It offered no summary of any decision and no index of summaries by subject matter. Defendant Secretary of the Army had performed neither act.

139. On October 1, 2026, the website's page for the Board for Correction of Naval Records listed that board's decisions only as files in folders by calendar year, from 1998 through 2026. It offered no summary of any decision and no index of summaries by subject matter. Defendant Secretary of the Navy had performed neither act.

140. On October 1, 2026, the website's page for the Air Force Board for Correction of Military Records listed that board's decisions only as files in folders by calendar year, from 1984 through 2026. It offered no summary of any decision and no index of summaries by subject matter. Defendant Secretary of the Air Force had performed neither act.

141. On October 1, 2026, the website's page for the Board for Correction of Military Records of the Coast Guard listed 2,853 files in 25 folders by topic, such as "Drugs" and "NJP and Court-Martial." It offered no summary of any decision, and so no index of summaries by subject matter. Defendant Secretary of Homeland Security had published no summaries, and so no index of summaries.

142. Each of these omissions concerns an identifiable required act. The Institute seeks its completion, while leaving the choice of lawful implementation methods to the responsible officials.

143. Compliance is practicable, and the Institute's Reading Room and the Board of Veterans' Appeals show it. Section 1552(a)(5) requires a summary of each final decision and an index of those summaries by subject matter, and compliance can be checked by anyone. Each decision either has a summary or it does not, and the summaries either are indexed by subject matter or they are not. At a minimum, a summary of a decision states the issues the applicant raised, the board's resolution of each and the outcome, and an index of the summaries by subject matter allows the public to identify the cases similar in issue and the reasons relief was granted or denied, as the Navy's own rule describes. 32 C.F.R. § 723.11(b)(2). That minimum defines what the law requires, not how the Secretaries produce it.

144. The Secretaries of the Navy and the Army have also failed to do the indexing their own regulations require. The Navy's rule requires that the decisions of the Board for Correction of Naval Records be indexed so that the public can identify cases similar in issue, and that "[t]he index shall be published quarterly." 32 C.F.R. § 723.11(b)(2). On October 1, 2026, the Board's pages on the website offered no index of any kind, only lists of files arranged by year. The Army's rule requires that "a redacted copy of each decision will be indexed by subject." 32 C.F.R. § 581.3(i)(2)(i). On October 1, 2026, the Army Board for Correction of Military Records' pages offered no subject index, only lists of files arranged by year. An agency is bound by the regulations it makes, and each of these Secretaries has disregarded the Secretary's own. The failure is continuing. Each quarter that passes without the index the Navy's rule requires, and each decision the Army posts without a subject index, is a new omission.

145. Each of these acts is a discrete agency action that 10 U.S.C. § 1552(a)(5) and the Secretaries' regulations require. The statute says "shall," the same word that requires the Secretaries to act through the boards at all. The Secretaries have not taken those actions, and their failure is agency action unlawfully withheld, which the Court may compel under 5 U.S.C. § 706(1). The correction boards of all three military departments publish their decisions through one centralized website operated under Department of Defense guidance, no single military department can perform the duties of § 1552(a)(5) on the website for the others, and the Secretary of Defense, who has authority, direction and control over the military departments, is named so that complete relief can be ordered. The Institute does not challenge the Defendants' general management of the website. It seeks only the specific acts the law requires. Counts V and VII are pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

146. In the alternative, if the Court finds that any of these acts was not due on a date certain, the Secretaries' failure to perform it is agency action unreasonably delayed, which the Court may also compel under 5 U.S.C. § 706(1). Congress set October 1, 2026 as the date the duties took effect and gave the Secretaries more than twenty-one months to prepare. In July 2025 the Government Accountability Office told the Department that the posted decisions could be sorted only by board and year, and the Department concurred in its recommendation that decisions be organized so that users can identify specific types of cases. The Secretaries of the Navy and the Army had already required subject indexes of their boards' decisions by their own regulations, and neither has published one. Since the date Congress set passed, no Defendant has stated any new date on which a summary of any decision or a subject index will be published. Each day of delay denies veterans and those who help them information the law requires the Secretaries to give them. The delay falls on veterans' health and welfare, because a veteran's

characterization of service can decide access to medical care, education benefits and employment, and veterans preparing their own petitions cannot find how the boards have decided cases like theirs. The Institute's Reading Room and the Board of Veterans' Appeals show that the work is practicable. No competing priority excuses the failure to perform duties that Congress set by statute and that the Secretaries set by their own regulations.

147. This Count does not seek publication of the decisions themselves, which Count IV seeks under the Freedom of Information Act. The Freedom of Information Act does not require any agency to write a summary of a decision or to index summaries by subject matter, and production of records to the Institute would not perform those duties. The Freedom of Information Act's requirement of current indexes providing identifying information does not require a summary of any decision or an index of summaries by subject matter. For the acts sought in this Count, the Institute has no other adequate remedy in a court. 5 U.S.C. § 704.

148. The duty reaches every final decision on the website. Nothing in the statute limits the requirement to decisions issued or posted after its effective date. Congress enacted the requirement on December 23, 2024, and gave the Secretaries until October 1, 2026, more than twenty-one months, to prepare the summaries and the index. The statute governs what the website must contain from October 1, 2026 forward, and on that date the website already held the more than 213,000 decisions of the Army, Navy and Marine Corps, and Air Force correction boards that its own lists count. Each of those decisions, and each decision not yet posted, requires a summary, indexed by subject matter. The Secretaries' own regulations independently require indexes of the decisions they cover. Scale is no excuse. The Institute, without outside funding, extracted and organized the text of these same decisions in September 2026. The

Department of Defense, with more than $890 billion authorized for national defense in fiscal year 2026 alone, has not published a summary of one of them. Pub. L. No. 119-60.

149. The Institute sues for itself and for its members identified above under "The Institute's members," including Mr. Riddle, Mr. Cady, Mr. Roselli, Ms. Mills, Dr. Stuessy, Mr. Monk and the National Veterans Council for Legal Redress.

150. Complete relief for the Institute and its members requires that the summaries and the index be published on the centralized website. The Institute cites the boards' decisions in petitions and court filings, shares them with veterans and their counsel, and publishes research that others must be able to check against the official record. A summary or index furnished privately to the Institute would not perform the duty § 1552(a)(5) imposes, and the website cannot publish one version for the Institute and another for the public. Any benefit to others is incidental to the relief the Institute and its members need.

**COUNT VI — Agency action unlawfully withheld or unreasonably delayed, a quarterly index of the discharge review boards' decisions, 5 U.S.C. § 706(1); 32 C.F.R. § 70.8(l)(4); in the alternative, 28 U.S.C. § 1361 (against the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy and the Secretary of the Air Force)**

151. The Institute incorporates by reference all prior paragraphs.

152. The Department of Defense's own rule for the discharge review boards requires that their decisions "be indexed in a usable and concise form so as to enable the public, and those who represent applicants before the DRBs, to isolate from all these decisions that are indexed, those cases that may be similar to an applicant's case and that indicate the circumstances under or reasons for (or both) which the DRB or the Secretary concerned granted or denied relief." 32

C.F.R. § 70.8(l)(4). The rule applies to the Office of the Secretary of Defense and the military departments. 32 C.F.R. § 70.2. It assigns the index to the Office of the Secretary of Defense, directing an Assistant Secretary of Defense to "[m]aintain the index of decisions and provide for timely modification of index categories to reflect changes in discharge review policies, procedures, and standards issued by the OSD and the Military Departments." 32 C.F.R. § 70.4(b)(4). That officer acts under the authority, direction and control of the Secretary of Defense. 10 U.S.C. § 113(b). The same rule directs the Secretary of the Army to "[p]rovide overall guidance and supervision to the Armed Forces Discharge Review/Correction Board Reading Room with staff augmentation, as required, by the Departments of the Navy and Air Force," and it is that Reading Room that "shall publish indexes quarterly for all DRBs." 32 C.F.R. §§ 70.4(c)(5), 70.8(l)(4)(iii).

153. The rule prescribes what the index must contain. It "shall include" the case number, the date, character of, reason and authority for the discharge, the decisions of the board and of any reviewing authority, "and the issues addressed in the statement of findings, conclusions, and reasons." 32 C.F.R. § 70.8(l)(4)(i).

154. The rule also sets a schedule. It requires that the indexes be published "quarterly for all DRBs," and "[a]ll DRBs shall be responsible for timely submission to the Reading Room of individual case information required for update of the indexes." 32 C.F.R. § 70.8(l)(4)(iii).

155. On October 1, 2026, the website's pages for the Army Discharge Review Board, the Naval Discharge Review Board and the Air Force Discharge Review Board listed each board's decisions only as files in folders by year, or by service and year, with no index of any kind. On November 2, 2026, those pages were identical, byte for byte, to what they were on

October 1. Asked under the Freedom of Information Act for the categories of the Naval Discharge Review Board's index, the Department of the Navy answered that "[w]ithin the reading room, case records are categorized by Service Branch and Year."

156. The discharge review boards' index and the correction boards' subject index are parts of one task. The decisions of both kinds of board are posted on the same website, for the same veterans, and both indexes exist so that a veteran can find the cases like the veteran's own. The Department had more than twenty-one months to prepare the index § 1552(a)(5) requires. It published neither index.

157. Each quarterly index is a discrete act the rule requires, with contents and a schedule the rule prescribes. The Defendants named in this Count have not published it. Their failure is agency action unlawfully withheld, which the Court may compel under 5 U.S.C. § 706(1). In the alternative, it is agency action unreasonably delayed. The rule has long required a quarterly index, and none appears on the website. The duty recurs. Each quarter that ends without a published index is a new omission, including the quarter that ended September 30, 2026. And each day that passes without the index is another day that veterans and their advocates are denied information the regulation requires the Department to give them.

158. In the alternative, the duty is clear and nondiscretionary, the Institute has a clear right to its performance, and no other adequate remedy exists, so the Court may compel it by mandamus under 28 U.S.C. § 1361.

159. The Institute represents veterans before the military review boards without charge and studies the discharge review boards' decisions, and the National Veterans Council for Legal Redress, a member of the Institute, helps veterans apply to upgrade their discharges. Without the

index, neither can do what the rule exists to allow, which is to isolate the cases similar to an applicant's and learn why relief was granted or denied. The Institute sues for itself and for its members identified above, including the National Veterans Council for Legal Redress.

160. This Count does not reach the Coast Guard's discharge review board, which is governed by a separate rule of the Department of Homeland Security.

**COUNT VII — Mandamus, in the alternative to Count V, 28 U.S.C. § 1361; 10 U.S.C. § 1552(a)(5); 32 C.F.R. §§ 723.11(b)(2), 581.3(i)(2)(i) (against the Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force and the Secretary of Homeland Security)**

161. The Institute incorporates by reference all prior paragraphs.

162. The Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force and the Secretary of Homeland Security each has a clear, nondiscretionary duty to perform the acts described in Count V. Section 1552(a)(5) and the regulations pleaded in Count V require them and leave the Secretaries no discretion whether to perform them, and the Institute has a clear right to their performance. Where the law assigns an officer of the United States a ministerial duty, one the law requires and leaves to no discretion, and a person's rights depend on its performance, a court may compel the officer to perform it, as it has since *Marbury v. Madison*.

163. If the Court holds that relief under 5 U.S.C. § 706(1) is unavailable for any of these acts, the Institute has no other adequate remedy for it, and the Court should compel its performance under 28 U.S.C. § 1361. This Count is brought against those four Secretaries only.

As in Count V, this Count does not seek publication of the decisions themselves, which Count IV seeks under the Freedom of Information Act.

**COUNT VIII — Deleting the names and withholding the votes of the deciding officials without written justification, Freedom of Information Act, 5 U.S.C. § 552(a)(2); 32 C.F.R. §§ 723.6(a)(3), 723.11(b)(1); and, in the alternative, 5 U.S.C. § 706(2) (against the Department of the Navy and the Secretary of the Navy)**

164. The Institute incorporates by reference all prior paragraphs.

165. The final decisions of the Board for Correction of Naval Records are final opinions that the Department of the Navy must make available for public inspection in an electronic format. 5 U.S.C. § 552(a)(2)(A).

166. The Department may delete identifying details from those decisions only "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy," and "the justification for the deletion shall be explained fully in writing." 5 U.S.C. § 552(a)(2).

167. The Department deletes from the decisions it publishes the names of the Board members who decided each case and the name of the official who signed the decision, and it withholds the members' votes, which the decisions say will be furnished only upon request. Disclosing the names of the Board members, whose votes the Board's own regulation makes public, and of the signing official, each acting in an official capacity, is not a clearly unwarranted invasion of personal privacy. The Department published the names of the Board's signing officials from at least 1998, the earliest year of decisions it has posted, until mid-2015. Since then it has deleted those names from the decisions it publishes as a rule, not case by case. On

information and belief, the deletions reflect a decision of the Board or the Secretary that the Board's staff apply as mandatory.

168. The Department has not explained fully in writing the justification for these deletions. Its citations of 5 U.S.C. § 552(b)(6) and of a 2005 memorandum in its two November 5, 2026 letters to the Institute, described above, are not such an explanation.

169. The Board's own regulations require that the name and final vote of each Board member be recorded following a hearing or a recommendation to correct the record, and that the record of the votes of Board members be made available for public inspection. 32 C.F.R. §§ 723.6(a)(3), (c), 723.11(b)(1). Section 723.11(b)(3), which directs that names be deleted, follows and serves its clause protecting the privacy of "the applicant and other persons," and it does not reach the Board members whose votes § 723.11(b)(1) makes public. Section 1552(a)(5) directs redaction of personally identifiable information to protect the privacy of claimants. The name of a federal official who decided or signed a decision in an official capacity is not personally identifiable information of a claimant, and neither the text of § 1552(a)(5) in effect from 2016 to 2026 nor the text in effect since October 1, 2026, refers to the Board's officials. Any deletion must also meet 5 U.S.C. § 552(a)(2), which permits it only to the extent required to prevent a clearly unwarranted invasion of personal privacy and requires that its justification be explained fully in writing.

170. In the alternative, the Department's practice since 2015 of deleting from every published decision the names of the Board members who decided it and of the official who signed it is agency action of the Secretary of the Navy that rests on a reading of 10 U.S.C. § 1552(a)(5) and 32 C.F.R. § 723.11(b)(3) that neither text supports. It is not in accordance with

law and is in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C). The Institute asks the Court to hold that practice unlawful and set it aside as applied to the names and votes of the Board's members and the name of its signing official. The practice is final agency action. The Department applies it to the decisions it publishes as a rule, it determines what the public may learn from each decision, and nothing about it is tentative. Each decision the Department publishes with those names deleted is a new application of the practice. The Institute was first injured by the practice no earlier than September 2026, when, first as the unincorporated association described above and then as a corporation, it began to use the Board's published decisions, and its claim accrued within six years before this action. 28 U.S.C. § 2401(a). If the Court holds that the Freedom of Information Act affords no remedy for these deletions, the Institute has no other adequate remedy in a court. 5 U.S.C. § 704. This alternative is pleaded under Federal Rule of Civil Procedure 8(d)(2).

171. The Institute is injured in its own right. Its research on the Board depends on knowing who decided each case and how each member voted, and the deletions deny it that information.

172. The Institute sues for itself and for its members identified above under "The Institute's members."

173. The deletions deprive the Institute and its members of information the law requires the Department to make public, the names of those who decided each case and how each member voted. Complete relief requires that the names and votes appear in the decisions the Department publishes. The Department publishes one version of each decision for everyone, and the Institute's research and filings must be checked against that public record.

**COUNT IX — Declaratory judgment under Article II of the Constitution, the Take Care Clause, 28 U.S.C. §§ 1331, 2201 (against the President, in his official capacity)**

174. The Institute incorporates by reference paragraphs 1 through 105 as if fully set forth in this Count.

175. The Constitution gives Congress the power "To make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14. Section 1552(a)(5) is such a rule. It governs the boards that decide whether the records of America's service members and veterans will be corrected.

176. The Constitution vests the executive power in the President. U.S. Const. art. II, § 1, cl. 1.

177. The Constitution does not leave the execution of the laws to the President's choice. It commands that he "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Before he may act, he swears that he "will faithfully execute the Office of President of the United States" and will "preserve, protect and defend the Constitution of the United States." U.S. Const. art. II, § 1, cl. 8. That duty is his own, and it runs to every law Congress has made for the armed forces.

178. The President appoints each Secretary responsible for § 1552(a)(5), and each serves at his pleasure and under his direction. 10 U.S.C. §§ 113(a)(1), 7013(a)(1), 8013(a)(1), 9013(a)(1); 6 U.S.C. § 112(a)(1). The Secretary of Defense has authority, direction and control over the Department of Defense "[s]ubject to the direction of the President." 10 U.S.C. § 113(b). The Secretaries of the Army, the Navy and the Air Force each act subject to the authority, direction and control of the Secretary of Defense. 10 U.S.C. §§ 7013(b), 8013(b), 9013(b). The

Coast Guard is a service in the Department of Homeland Security, except when it operates as a service in the Navy. 14 U.S.C. § 103(a). The Secretary of Homeland Security has direction, authority and control over that Department. 6 U.S.C. § 112(a)(2). The President has directed these Secretaries to correct the consequences of wrongful discharges before. Executive Order 14184 ordered the Secretary of Defense or the Secretary of Homeland Security, as appropriate, to "take all necessary action permitted by law" to "make reinstatement available" to service members discharged solely for refusing the COVID-19 vaccine, and to let them "revert to their former rank and receive full back pay, benefits, bonus payments, or compensation." Exec. Order No. 14184, § 2. Carrying out that order, the Department directed its review boards to review those members' records on their own motion, as alleged above.

179. The duties of § 1552(a)(5) rest in two executive departments. The Army, Navy and Marine Corps, and Air Force correction boards and the centralized website are within the Department of Defense, and the Board for Correction of Military Records of the Coast Guard is within the Department of Homeland Security. Even within the Department of Defense, responsibility for the website is divided. The Army is charged with its guidance and supervision, the Air Force hosts and operates it, and the Government Accountability Office found responsibility for it unclear, as alleged above. No Secretary has authority over both departments. The President is the only officer of the United States who directs both Secretaries. 10 U.S.C. § 113(b); 6 U.S.C. § 112(a). Carrying out § 1552(a)(5) therefore requires each Secretary named in this action, and the President, who alone directs them all. A declaration of the President's duty serves a purpose that no order against a single Secretary can.

180. Section 1552(a)(5) leaves no discretion. It says "shall." It requires that each final decision be made public, that a summary of each decision be published, and that the summaries

be indexed by subject matter. The President has no more discretion to let those duties go unperformed than to do away with the boards that the same section says corrections "shall be made" through. Where a law leaves the officers who must carry it out no discretion, the President's duty to take care that it is faithfully executed leaves none either. The Constitution gives the President no power to suspend a law of Congress, to dispense with it, or to permit the officers under his direction to disregard it.

181. Section 1552(a)(5) has not been carried out since the date Congress set. Count V asks whether the Secretaries have violated the statute. This Count asks a different question, whether Article II, Section 3 permits the President to leave unexecuted a law that commands his subordinates in mandatory terms. The failures of publication and searchability that the Government Accountability Office reported in July 2025 span decisions closed from January 2018 through March 2024, across administrations, and they continue under the present one. Whoever held the office before, the duty to take care that this law is faithfully executed now rests with the President.

182. An actual controversy exists between the Institute and the President over whether his duty under Article II, Section 3 of the Constitution extends to 10 U.S.C. § 1552(a)(5), and whether that law is being faithfully executed. A court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

183. The Institute asks the Court only to declare the law as it applies to the President in his official capacity. It does not ask the Court to enjoin the President, to issue a writ against him, or to direct how he exercises any discretion the Constitution or the laws give him. A declaration

of the President's duty is relief in its own right, which the Court may grant "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

184. Count IX is brought under the federal courts' long-recognized equitable power to grant relief against executive conduct the Constitution forbids, and 28 U.S.C. §§ 2201–2202 supply the declaratory remedy.

185. Count IX is independent of Counts I through VIII, and no relief sought in those Counts depends on it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Institute for Constitutional Military Law respectfully requests that the Court grant the following relief.

A. Declare, as to each claim established by the evidence and remaining in controversy, that the responsible Defendant's identified withholding or omission violates the statutory or regulatory duty pleaded in that claim;

B. On Counts I through III, order each liable agency to conduct an adequate search for the records encompassed by the request items identified in the Complaint and to produce to Plaintiff all responsive, nonexempt records and reasonably segregable nonexempt portions, according to an enforceable schedule established by the Court;

C. On Count IV, order each liable agency to make available for public inspection in electronic format the boards' final decisions adjudged subject to 5 U.S.C. § 552(a)(2), or, at a minimum, to produce them to Plaintiff, and to maintain and make available the current indexes of those decisions that 5 U.S.C. § 552(a)(2) requires;

D. On Count V, issue an order under 5 U.S.C. § 706(1) compelling the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force and the Secretary of Homeland Security, or, in the alternative on Count VII, a writ of mandamus compelling the Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force and the Secretary of Homeland Security, to perform the nondiscretionary acts required by 10 U.S.C. § 1552(a)(5) and the regulations pleaded in Counts V and VII, namely a summary of each covered final decision, published on the centralized Internet website, and an index of those summaries by subject matter, with the required protection of personally identifiable information, specifying in the order the covered boards, decision categories and periods, acts and compliance dates, and, on Count VI, an order under 5 U.S.C. § 706(1) or, in the alternative, a writ of mandamus compelling the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy and the Secretary of the Air Force to publish the quarterly index of the decisions of the Army, Navy and Marine Corps, and Air Force discharge review boards that 32 C.F.R. § 70.8(l)(4) requires;

E. Declare that the "summary of each decision, to be indexed by subject matter" that 10 U.S.C. § 1552(a)(5) requires means, at a minimum, a summary of each final decision that states the issues the applicant raised, the board's resolution of each and the outcome, and an index of those summaries that enables the public "to identify those cases similar in issue together with the circumstances under and/or reasons for which the Board and/or Secretary have granted or denied relief," 32 C.F.R. § 723.11(b)(2);

F. On Count VIII, order the Department of the Navy to make available, in the decisions of the Board for Correction of Naval Records it publishes, the names and votes of the Board

members who decided each case and the name of the official who signed it, or to explain fully in writing the justification for each deletion, as 5 U.S.C. § 552(a)(2) requires, or, in the alternative, hold unlawful and set aside under 5 U.S.C. § 706(2) the Department's practice of deleting those names and votes;

G. On Count IX, declare that 10 U.S.C. § 1552(a)(5) imposes on the officers who act under the President's direction a nondiscretionary duty to make each final decision public and to publish a summary of each, indexed by subject matter, that the duty is unperformed as alleged in Count V, and that Article II, Section 3 of the Constitution gives the President no power to suspend that law or to permit those officers to leave it unperformed;

H. Upon finding a violation, order each liable Defendant to file, within a time the Court sets, a plan for full compliance with each duty adjudged, with completion dates and interim milestones, require periodic reports of the work completed, and retain jurisdiction until the Court is satisfied that each final decision of the covered boards is available on the website with a summary, indexed by subject matter, and that the discharge review boards' decisions are indexed and the indexes published quarterly, as the law requires;

I. Award Plaintiff reasonable attorney fees and other litigation costs to the extent authorized by 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(b) and (d), or other applicable law; and

J. Grant such other relief as the Court finds just and proper.

Dated: November 10, 2026

INSTITUTE FOR CONSTITUTIONAL MILITARY LAW

By its attorney,

s/Tyson Manker

Tyson Manker (ARDC No. 6317660)
Lead counsel
Institute for Constitutional Military Law
P.O. Box 203
Jacksonville, IL 62651
Phone: (480) 420-3911
legal@icml.us